UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| POLYLOOM CORPORATION<br>OF AMERICA d/b/a TENCATE GRASS<br>NORTH AMERICA,<br><br>  *Plaintiff*,<br><br>v.<br><br>GRASSROOTS ENVIRONMENTAL<br>EDUCATION, INC. et al.,<br><br>  *Defendants*. | Case No. 1:25-cv-14<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Michael J. Dumitru |

**ORDER**

Before the Court is Plaintiff Polyloom Corporation of America's motion for jurisdictional discovery (Doc. 46). For the reasons set forth below, Plaintiff's motion (*id.*) will be **GRANTED IN PART** and **DENIED IN PART**. Additionally, a hearing on Defendants' motion to dismiss (Doc. 29) will be **SET** for **July 14, 2025, at 1:00 p.m**.

I.   **BACKGROUND**

Plaintiff is a "global group of market-leading companies involved in designing and producing . . . artificial grass surfaces" and "one of the largest designers, producers, distributors, manufacturers, installers, and recyclers of artificial turf in the United States." (Doc. 28, at 3–4.) Plaintiff claims it is so prominent in the artificial turf industry, that anyone reading a statement related to artificial turf would conclude that the statement is about Plaintiff and its products. (*Id.* at 5.)

Defendant Grassroots Environmental Education, Inc. ("Grassroots") is an environmental advocacy organization that advises the public "on the health risks of common environmental

1

exposures," including artificial turf fields. (*Id.* at 5, 10 (internal quotations and citation omitted).) Plaintiff alleges that Defendants Kyla Bennett, Jay Feldman, Sarah Evans, and Patricia Wood (collectively "the Individual Defendants") also advocate against the use of artificial turf fields. (*See id*. at 2.)

On January 20, 2025, Plaintiff filed the present action, asserting claims for defamation and trade libel as well as tortious interference with prospective business relationships. (*See* Doc. 1.) Plaintiff alleges that Defendants, particularly Grassroots, have defamed it by making (or planning to make) false statements about the health risks of artificial turf fields on Grassroots' two websites ("the Websites"), social media pages, and in an upcoming webinar. (*See* Doc. 28.) These allegedly false statements assert that artificial fields are not environmentally friendly, contain dangerous chemicals, and that aging artificial turf fields have been found to contain lead. (*See id.* at 10–11.) Plaintiff further alleges that Grassroots "has intentionally sent [this] false and defamatory information into Tennessee with the intent of impacting and undermining Plaintiff." (*Id*. at 8.) Plaintiff does not, however, allege that Grassroots explicitly mentioned Plaintiff or Tennessee in making these allegedly defamatory statements. (*See generally id*.)

As it relates to the Individual Defendants, Plaintiff does not identify any specific statements they have made about artificial turf. (*See generally id*.) Nonetheless, Plaintiff alleges that, "[u]pon information and belief, the Individual Defendants regularly collaborate and partner with [Grassroots] in their collective effort to spread false and defamatory statements relating to artificial turf and the artificial turf industry." (*Id*. at 6.) Plaintiff further claims that the

2

Individual Defendants are scheduled to speak at an upcoming webinar about artificial turf hosted by Grassroots and will make defamatory statements about Plaintiff then. (*Id*. at 9.)

On February 14, 2025, Defendants moved to dismiss for lack of personal jurisdiction (Doc. 17). Twenty-one days later, Plaintiff filed an amended complaint (Doc. 28), and Defendants again moved to dismiss for lack of personal jurisdiction. (Doc. 29.) Defendants submitted affidavits denying that they intentionally targeted Tennessee or that they even knew Plaintiff existed until the present lawsuit. (*See* Docs. 29-1–29-4.) Plaintiff responded in opposition to Defendants' motion and moved for jurisdictional discovery. (*See* Doc. 46.) Plaintiff acknowledges that Defendants' affidavits tend to contradict its allegations regarding personal jurisdiction and argues that if the Court intends to consider these affidavits, jurisdictional discovery is necessary. (*See id*.)

## II. STANDARD OF REVIEW

There are two questions the Court must answer: (1) should the Court resolve Defendants' motion to dismiss without jurisdictional discovery and, (2) if jurisdictional discovery is appropriate, what is the proper scope of discovery? To answer these questions, the Court must briefly discuss the standard for dismissal for lack of personal jurisdiction and Plaintiff's theories of personal jurisdiction.

### A. Rule 12(b)(2)

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). "The court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549

(6th Cir. 2016) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). Tennessee's long-arm statute, Tennessee Code Annotated § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by the Due Process Clause. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645–46 (Tenn. 2009); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). Therefore, the Court only needs to determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

"Due process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to accord with 'traditional notions of fair play and substantial justice.'" *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (citations omitted). "[W]hether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."[1] *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). Specific jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum State" because due process "principally protect[s] the liberty of the nonresident defendant—not the convenience of plaintiffs." *Id.* at 284 (quotations and citations omitted). Moreover, the "minimum contacts" analysis requires the defendant to "purposefully reach out beyond their State and into another." *Id.* at 285 (emphasis added). In the case of intentional torts, jurisdiction over a defendant "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 286.

The Sixth Circuit has articulated a three-part test for analyzing specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action

---

[1] Plaintiff does not allege that there is general jurisdiction over Defendants. (*See generally* Doc. 28.) Accordingly, the Court's will only examine whether there is specific personal jurisdiction over Defendants.

> must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods. & Controls, Inc.*, 503 F.3d at 550).

As is relevant here, Plaintiff asserts two theories of purposeful availment: (1) the *Zippo* website-interactivity theory and (2) *Calder* effects-test theory.[2] (*See* Doc. 47.) Under the *Zippo* theory, "[a] website operator purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 986 (M.D. Tenn. 2024) (citation, emphasis, and internal quotations omitted). The more interactive a website, the more likely it is that purposeful availment will be found. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). "[P]urely passive sites that only offer information for the user to access" typically will not give rise to personal jurisdiction in a state the website is accessible. *Concord Music*, 738 F. Supp. 3d at 986 (citations omitted). However, "highly interactive sites where a defendant clearly transacts business or forms contracts with users [of a forum state]" typically will give rise to personal jurisdiction. *Id*. When a website falls somewhere in between these extremes, a court must "examin[e] the level of interactivity and the commercial nature of the exchange of information" to determine whether personal jurisdiction exists. *Id*.

---

[2] The *Zippo* theory appears to apply only to Grassroots, not the Individual Defendants because Plaintiff does not allege that they owned or operated the Websites. *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015) (noting that the *Zippo* test does not apply when "the defendants do not own or operate the websites" in question). Plaintiff must rely on the *Calder* effects-test theory for the Court to have personal jurisdiction over the Individual Defendants.

5

Under the *Calder* effects test, personal jurisdiction exists if "(1) the defendant intentionally committed a tortious action which was expressly aimed for dissemination in the forum state, and (2) the brunt of the effects of the actions are felt within the forum state." *Binion*, 95 F. Supp. 3d at 1060 (citation and internal quotations omitted). The fact that an injury occurred on a plaintiff's home turf does not necessarily mean that there is personal jurisdiction over a defendant. *See Air Prods. & Controls, Inc.*, 503 F.3d at 552 (noting that "the mere allegation of intentional tortious conduct which has injured a forum resident" is not enough to establish personal jurisdiction under *Calder*). It is also not enough that a defendant "could foresee" that an injury would occur in the forum state. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994). Instead, the plaintiff must plead facts which show an intent by the defendant to *expressly target* the forum state. *See Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005). In a defamation action for instance, a plaintiff may produce evidence that a defendant "took affirmative steps to direct the posts to a [given forum state] audience." *Binion*, 95 F. Supp. 3d at 1060.

Here, based on these standards, there are fundamental factual disputes as to Plaintiff's theories of jurisdiction. Accordingly, the Court must determine the proper procedure for resolving Defendants' motion to dismiss.

### B. Procedure for Resolving a 12(b)(2) Motion

"A district court has discretion in how it resolves a 12(b)(2) motion." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (citation omitted). A court faced with a motion to dismiss for lack of personal jurisdiction has three options: "[1] it may decide the motion upon the affidavits alone; [2] it may permit discovery in aid of deciding the motion; or [3] it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*

*v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). An evidentiary hearing may be appropriate when "the written submissions raise disputed issues of fact or seem to require determinations of credibility." *See Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citation omitted). A court may also "order discovery of a scope broad enough to prepare the parties for that hearing." *Id*. (citation omitted). If a court decides to hold a hearing "the plaintiff must overcome [a defendant's motion] by a preponderance of the evidence," rather than by only making a prima facia showing. *See Malone*, 965 F.3d at 505 (citation omitted).

Here, there is an important factual dispute about Defendants' intent. Plaintiff contends that "[Grassroots] has intentionally sent false and defamatory information into Tennessee with the intent of impacting and undermining Plaintiff" and that the Individual Defendants collaborated in this campaign. (Doc. 28, at 6, 8.) However, the affidavits submitted by Defendants directly contradict this claim. Woods, the founder and Executive Director of Grassroots, avers that "neither Grassroots nor I, nor any of its staff members have ever heard of Polyloom's existence prior to being served in this action." (Doc. 29-1, at 3.) Bennett and Evans both similarly aver that they had "never heard of Polyloom prior to the commencement of this action" and have "never reached into Tennessee in order to discuss Polyloom with anyone." (Doc. 29-3, at 3; Doc. 29-4, at 3.) Feldman avers not only that he has no contacts with Tennessee, but that that "[his] presentation [at the planned webinar] was to be limited to a discussion of *alternatives* to artificial turf, not artificial turf itself." (Doc. 29-2, at 3 (emphasis added).) Defendants' denial that they "expressly aimed [their] tortious conduct" at Plaintiff (and therefore Tennessee) strikes at the core of Plaintiff's *Calder* theory of personal jurisdiction. *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005).

7

Because the "the written submissions raise disputed issues of fact" and "require determinations of credibility," limited jurisdictional discovery followed by an evidentiary hearing is the best course of action.[3]  *Serras*, 875 F.2d at 1214.  Still, the Court must determine the proper scope of discovery.

### C.  Scope of Jurisdictional Discovery

As noted above, "whether or not to allow discovery prior to deciding a motion to dismiss for lack of jurisdiction is within the discretion of the district court."  *KNC Invs., LLC v. Lane's End Stallions, Inc.*, 579 F. App'x 381, 385 (6th Cir. 2014) (citation omitted).  Even if a court allows jurisdictional discovery, it has discretion under the Federal Rules of Civil Procedure "to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."  *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (quoting Fed. R. Civ. P. 26(b)(2)).  While the scope of discovery should be broad enough to give "a plaintiff . . . access to information necessary to establish her claim," the court should not "permit[] [a plaintiff] to go fishing."  *Id*. (internal quotations omitted).  In short, "a trial court retains discretion to determine that a discovery request is too broad and oppressive" and tailor discovery appropriately.  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citation omitted); *see also Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008) ("Much of discovery is a fishing expedition of sorts, but the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water.").

---

[3] The parties also dispute if the Websites are interactive, but this is a far less important dispute. The Court can readily determine for itself if the Websites are interactive. The parties' differing characterizations of the Websites as "interactive" or "non-interactive" are simply legal conclusions that the Court need not credit.

8

Here, Plaintiff requests that the Court allow it to "serve upon Defendants (1) interrogatories, (2) requests for production, (3) notices of depositions for Patricia Wood, Jay Feldman, Dr. Sarah Evans, and Dr. Kyla Bennett, and (4) a notice of a 30(b)(6) deposition of Grassroots Environmental Education, Inc." (*See* Doc. 46, at 2.) Plaintiff states that this discovery is necessary to determine: (1) how interactive the Websites are, (2) whether Grassroots used the Websites to expressly target Tennessee, (3) the residency of Grassroots' donors and the Webinar registrants, and (4) the "express aim" of Defendants in making the allegedly defamatory statements. (*See* Doc. 47, at 15–20.) However, given the justifications underpinning these requests, most are overly broad and unduly burdensome.

As an initial matter, Plaintiff's allegations regarding the Individual Defendants are slim, and, as a result, so should the scope of discovery. The true subject of this suit is Grassroots. As far as the Court can tell, the extent of the Individual Defendants' alleged wrongdoing is that they agreed to participate in a planned webinar about artificial turf. Plaintiff merely alleges that "[u]pon information and belief, the Individual Defendants regularly collaborate and partner with [Grassroots] in their collective effort to spread false and defamatory statements relating to artificial turf and the artificial turf industry" and they are scheduled to speak at the Webinar.[4] (Doc. 28, at 6.) Plaintiff has provided no reason to believe that the Individual Defendants have knowledge of the Websites or Grassroots' intent in making the allegedly defamatory statements. (*See generally id.*) The only relevant information that the Individual Defendants have relates to their own intent in participating in the Webinar. Accordingly, Plaintiff may serve interrogatories on each of the Individual Defendants. Depositions, requests for production, or any form of

---

[4] Plaintiff does not provide any details on what this "regular collaboration" entails. (*See* Doc. 28.) The only "collaboration" laid out in the complaint is the Webinar.

9

electronic discovery would be unduly broad and overly burdensome at this stage.  *See* Fed. R. Civ. P. 26(b)(2); *Anwar*, 876 F.3d at 854 (noting that a district court can prohibit depositions of witnesses who do not have "personal knowledge regarding the events or of the investigation underlying the case").

The scope of discovery as to Grassroots should be broader because it controls the Websites, is hosting the Webinar, and made the allegedly defamatory statements referenced in the complaint.  As such, Plaintiff may seek communications between Grassroots and the Individual Defendants related to the organization of the Webinar.  Additionally, Plaintiff may serve interrogatories upon Grassroots and may depose a representative of Grassroots pursuant to Rule 30(b)(6).  Plaintiff may determine via this deposition or the interrogatories whether Grassroots engaged residents of Tennessee via the Websites (including whether Grassroots solicited and received donations from Tennessee residents) and what Grassroots' intent was in making the allegedly defamatory statements.  That is the extent of the discovery the Court will allow.

The Court will also be clear on what Plaintiff may *not* seek.  Plaintiff may not seek the production of documents about Grassroots' intent in making the allegedly defamatory statements at issue in this case because they have not shown any likelihood that these documents exist.  *See C.H. By & Through Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (noting that a party must "give the district court a *reasonable basis* to expect that . . . discovery would reveal evidence that supports the claimed jurisdiction.") (emphasis added) (citations and internal quotations omitted).  Plaintiff merely argues, without evidence, that "Defendants likely have in their possession documents showing their mental state in making defamatory statements." (*See* Doc. 47, at 20.)  Plaintiff does not explain what sort of "documents" it is seeking or why it

believes that these documents exist. (*See id.*) This is bare speculation unsupported by any facts and accordingly the Court will deny production of documents related to Defendants' intent in making the allegedly defamatory statements cited in the complaint.

Additionally, Plaintiff may not seek electronically stored information about the Websites, donations, or Webinar registrants. Whether Tennessee residents have donated to Grassroots or registered for the Webinar can be ascertained via deposition and interrogatories. Discovery of electronically stored information, at this preliminary stage of the litigation, is overly broad and burdensome. *See* Fed. R. Civ. P. 26(b)(2).

Finally, Plaintiff may not seek information, electronic or otherwise, related to the interactivity of the Websites. Plaintiff's argument that discovery is needed to determine interactivity is perplexing. (*See* Doc. 47, at 15.) Plaintiff can determine how interactive the Websites are by simply visiting them. Plaintiff has clearly done this as it discusses the Websites' features at length and included screenshots. (*See id.* at 15–17.) Discovery is not necessary to produce evidence that Plaintiff already has within its possession and any discovery on this issue would be unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2).

The Court grants this limited discovery with some hesitance. Plaintiff's theory, boiled down, is that Defendants were intentionally targeting Tennessee despite never mentioning Plaintiff or Tennessee in their allegedly defamatory statements. The proposition that a person making non-specific statements about a general class of products (*i.e.*, artificial turf fields) can be hailed into a state simply because a company that makes that product is based there is suspect. *See Air Prods. & Controls, Inc*, 503 F.3d at 552 (noting that *Calder* requires more than "the mere allegation of intentional tortious conduct which has injured a forum resident"). Nonetheless, the

11

Case 1:25-cv-00014-TRM-MJD     Document 52     Filed 05/27/25     Page 11 of 12
PageID #: 310

Court will grant limited jurisdictional discovery to aid in an accurate determination of Defendants' motion to dismiss.

### III. CONCLUSION

For the above reasons, Plaintiff's motion for jurisdictional discovery (Doc. 46) is **GRANTED IN PART**. Plaintiff may:

1. Serve interrogatories upon all Defendants;
2. Depose a representative of Grassroots; and
3. Seek production of communications between Defendants related to the organization of the Webinar.

No other discovery will not be granted absent a compelling showing of need and relevancy. Discovery **SHALL** be completed on or before **July 7, 2025**. A hearing on Defendants' motion to dismiss (Doc. 29) is **SET** for **July 14, 2025, at 1:00 p.m**.

Additionally, Plaintiff's motion for a temporary restraining order (Doc. 4) is **DENIED** because Plaintiff has made no attempt to pursue what is intended to be "emergency relief."

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**