# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **POLYLOOM CORPORATION OF AMERICA d/b/a TenCate Grass North America,** | § § § § | |
| *Plaintiff*, | § | **DOCKET NO. 1:25-CV-00014** |
|  | § | |
| **v.** | § § | |
| **GRASSROOTS ENVIRONMENTAL EDUCATION, INC., DR. KYLA BENNETT, JAY FELDMAN, DR. SARAH EVANS, and PATRICIA WOOD,** | § § § § § § | |
| *Defendants*. | | |

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY</u>

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ........................................................................................................... 2

III. LEGAL STANDARD .................................................................................................. 7

IV. ARGUMENT ............................................................................................................... 7

    A.    The Court Should Compel Production of Grassroots' Webinar Invitations to Tennessee Parties. ................................................................................. 7

    B.    Grassroots' Evasive and Incomplete Response to Interrogatory Number 7 Is Deficient, and Its Objections Are Meritless. ......................................... 11

    C.    Defendant Bennett Must Fully and Accurately Respond to Interrogatory Number 5. ................................................................................................... 13

V. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bradford v. City of Chicago,*
2017 WL 2080391 (N.D. Ill. May 15, 2017) ...........................................................9

*Bridgeport Music, Inc. v. Still N The Water Pub.,*
327 F.3d 472 (6th Cir. 2003) .................................................................................8

*Cawley v. Eastman Outdoors, Inc.,*
2014 WL 4656381 (N.D. Ohio Sept. 16, 2014) ....................................................10

*In re Equity Land Title Agency, Inc.,*
326 B.R. 427 (Bankr. S.D. Ohio 2005) .................................................................10

*United States ex rel. Griffis v. EOD Tech., Inc.,*
2024 WL 3852128 (E.D. Tenn. Aug. 16, 2024) .....................................................7

*Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.,*
2019 WL 11670621 (E.D. Tenn. Sept. 18, 2019) ..................................................12

*JPMorgan Chase Bank, N.A. v. Neovi, Inc.,*
2006 WL 3803152 (S.D. Ohio Nov. 14, 2006) ......................................................14

*King v. City of Columbus,*
2019 WL 13516345 (S.D. Ohio Oct. 31, 2019) .....................................................10

*Siser N. Am., Inc. v. Herika G. Inc.,*
325 F.R.D. 200 (E.D. Mich. 2018) ........................................................................13

*Wilkinson v. Greater Dayton Reg'l Transit Auth.,*
2014 WL 1908298 (S.D. Ohio May 9, 2014) ........................................................10

**Rules**

Fed. R. Civ. P. 26(b)(1).................................................................................................6

Fed. R. Civ. P. 33 .......................................................................................................13

Fed. R. Civ. P. 37 .............................................................................................6, 11, 13

Plaintiff Polyloom Corporation of America d/b/a TenCate Grass North America ("TenCate"), by and through counsel, respectfully files this memorandum of law in support of its motion to compel jurisdictional discovery from Defendants Grassroots Environmental Education, Inc. ("Grassroots") and Dr. Kyla Bennett.

## I. INTRODUCTION

The Court ordered jurisdictional discovery to help determine whether Defendants purposefully availed themselves of Tennessee in relation to the defamatory statements or the Webinar that are the subjects of this case. Jurisdictional discovery has done just that—Grassroots has now revealed that it has documents in its possession showing that it purposefully directed invitations to its Webinar to individuals located in Tennessee. Exhibit 1 to the Declaration of John T. Cox III (hereinafter "Cox Dec." or "Ex.") at 3. ("Grassroots sent emails promoting the Webinar to . . . . individuals [] located in Tennessee."). Astonishingly, ***Grassroots refuses to produce those emails***.

Further, jurisdictional discovery has revealed that Defendant Bennett filed a false—or, at a minimum, seriously misleading—affidavit that this Court expressly relied on in its prior order. While Defendant Bennett's boilerplate affidavit in support of the motion to dismiss claimed that she had never even heard of Plaintiff, she now admits that she previously tweeted about TenCate. But even now, Defendant Bennett refuses to confess the extent of her knowledge and past statements about TenCate. While she implies that her only social-media post about TenCate consists of three tweets, she fails to acknowledge numerous other tweets, including her denunciation of, what she describes as, TenCate's "BS," "GALL," and "unbelievable chutzpah." Ex. 6 at 4. Defendant Bennett refuses to supplement her interrogatory responses to fully and accurately disclose her past statements about TenCate.

1

Lastly, Grassroots refuses to provide basic information in response to interrogatories about its Webinar, such as the number of registrants or their names—instead, Grassroots merely asks TenCate to take its word for it that Grassroots didn't inquire about the location of the registrants.

Defendants' objections to each of those discovery requests are meritless. Despite attempts to confer, the parties have been unable to resolve those disputes. Left with no choice, TenCate now moves to compel. The Court should overrule Defendants' objections and compel Grassroots to supplement its responses to Request for Production Number 5 and Interrogatory Number 7 and compel Defendant Bennett to supplement her response to Interrogatory Number 5.

## II. BACKGROUND

On May 27, 2025, the Court granted TenCate leave to conduct jurisdictional discovery, allowing TenCate to (1) "[s]erve interrogatories upon all Defendants," (2) "[d]epose a representative of Grassroots," and (3) "[s]eek production of communications between Defendants related to the organization of the Webinar." Dkt. 52 at 12. The Court also provided the parties with guidance on the sort of information it would not allow TenCate to request. *Id.* at 10–11. The Court provided 42 days for discovery, requiring that discovery be completed on or before July 7, 2025. *Id.* at 12.

On May 30, 2025, TenCate's counsel served interrogatories, requests for production, and a notice of a Rule 30(b)(6) deposition on counsel for Defendants. *See* Cox Dec. at 1. While the deadline for Defendants' responses was June 30, Defendants missed that deadline.[1] On July 1, after multiple prompts from TenCate's counsel, Defendants tardily provided their discovery responses. *Id.* at 2. Those responses had four material deficiencies.

---

[1] Pursuant to Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A), Defendants had 30 days to respond to those discovery requests. Because 30 days expired on June 29—a Sunday—Defendants got one extra day to serve their responses.

First, in Interrogatory Number 6 to Grassroots, TenCate asked Grassroots to "[i]dentify any person located in Tennessee . . . with whom you shared . . . the Defamatory Statements" or related statements about artificial turf. Ex. 1 at 4. Grassroots gave the following (non)response:

> Grassroots has not made any statements that are not based on scientific studies and reports, and has not knowingly or directly shared any such information with anyone in Tennessee *other than the individuals to whom the promotional email regarding the Webinar was sent*.

*Id.* at 5 (emphasis added).[2] That last phrase appears to reference an earlier response—to Interrogatory Number 3—in which Grassroots admitted that it "sent emails promoting the Webinar to . . . . individuals [] located in Tennessee." *Id.* at 3. For Interrogatory Number 6, the upshot is that Grassroots admitted to sharing information about artificial turf with Tennessee parties in connection with the Webinar, but it failed to identify those parties as required by Interrogatory Number 6.

TenCate brought this deficiency to Grassroots' attention. The parties conferred and partially resolved this issue without Court intervention. Grassroots' counsel identified five individuals associated with the University of Tennessee to whom it sent Webinar invitations— Doug Brown, John Chlarson, Yolanda Dillard, Cyndy Edmonds, and Kelley Myers. Ex. 4 at 2.[3]

---

[2] Grassroots claimed that this request was unduly burdensome only inasmuch as it sought information "in the past five years." Ex. 1 at 4–5. That objection doesn't appear to be relevant here, because TenCate is only asking the Court to compel production of information about invitations to the Webinar, which likely would have been sent between November 2024 and January 2025.

[3] Grassroots' counsel has provided by email the email addresses of the individuals located in Tennessee to whom it sent Webinar invitations, and TenCate's counsel has requested that such information about Tennessee invitees be placed in a supplemental interrogatory response. To conserve judicial resources, TenCate does not move to compel based on that issue in this motion, but TenCate reserves the right to seek any necessary relief if Grassroots declines to serve a supplemental interrogatory response or serves an inadequate supplemental response.

3

Second, Grassroots drastically and unilaterally cabined all requests for production, producing 73 pages of material in total. Ex. 8. While TenCate made six separate requests for production, Grassroots ignored those requests, expressly rewriting them into a single request. Ex. 2. Specifically, in response to each request for production, Grassroots uniformly averred that it was providing "[d]ocuments constituting communications *only* between Grassroots and the Individual Defendants, related *only* to the organization of the Webinar." *Id.* at 2 (emphasis added). Thus, for instance, although TenCate's requests for production sought documents like "invitations, advertisements, promotion, or marketing materials used in relation to the Webinar," Grassroots averred that it did not have to produce such invitations. *Id.* at 4.

Oddly enough, Grassroots produced only *one email* containing communications between the Defendants. Ex. 8 at 74. Even more confounding, despite its adamance that it did not have to produce invitations or promotional materials, ***Grassroots' production largely consisted of promotional materials***. For instance, Grassroots produced fourteen emails reflecting invitations concerning the Webinar that it sent to parties from the Northeastern United States, like New York or Massachusetts. *Id.* at 1–46. Likewise, the remainder of the documents appear to consist of publicly available social-media posts promoting Grassroots' website or the Webinar. *Id.* at 47–73. Conspicuously absent were the emails to the five Tennessee parties to whom Grassroots admitted sending invitations. In other words, Grassroots selectively produced promotional materials that support its opposition to jurisdiction, while selectively withholding promotional materials that support TenCate's arguments.

Pursuant to Rule 37, the parties conferred on this issue. While Grassroots agreed to copy and paste the (purported) text of the email invitations to the Tennessee parties in an email to

4

TenCate's counsel, it refused to produce the actual emails for TenCate to use in its upcoming deposition of Grassroots and the upcoming hearing with the Court.[4]

Third, the Court allowed TenCate to "ascertain[] via . . . interrogatories" "[w]hether Tennessee residents have . . . registered for the Webinar." Dkt. 52 at 11. Accordingly, TenCate asked Grassroots to "[i]dentify all Webinar registrants, including the total number of registrants, their names, and any data in Your possession tending to show the geographic location of such registrants." Ex. 1 at 5. In response, Grassroots did not identify a single Webinar registrant, provide the total number of registrants, or provide any other information (like email addresses) from which TenCate could assess the location of Webinar registrants. Instead, it merely stated that "Grassroots did not inquire about the location of registrants" and that "Zoom does not track or report the location of the Webinar registrants." *Id.*

Pursuant to Rule 37, the parties conferred on this issue. Grassroots declined to supplement its interrogatory responses, apparently on the theory that the only information it had to disclose in interrogatories was information showing whether "Grassroots 'engaged residents of Tennessee via the Websites' or its 'intent . . . in making the allegedly defamatory statements.'" Ex. 4 at 2.

Fourth, in support of Defendants' motion to dismiss, Defendant Bennett authored a sworn affidavit claiming that she "had never heard of" Polyloom Corporation of America d/b/a TenCate Grass North America "prior to the commencement of this action." Dkt. 29-3 at 3. And the Court relied on that portion of the affidavit to find a factual dispute in this case, noting that "Bennett and

---

[4] Grassroots' counsel refused to produce these emails after TenCate's counsel initially requested that they do so. TenCate's counsel has requested a second time that Grassroots produce the relevant emails and has not received a response. In the event that Grassroots does receive a satisfactory response and this issue becomes moot, it will notify the Court.

Evans both [] aver that they had 'never heard of Polyloom prior to the commencement of this action.'" Dkt. 52 at 7 (quoting Dkt. 29-3 at 3 and Dkt. 29-4 at 3).

But that was a false or seriously misleading affidavit—and, despite knowing that, Defendants never corrected their false representations before the Court ruled based in part on them. On May 23, 2025, four days before the Court entered its order allowing jurisdictional discovery, Grassroots and the Individual Defendants filed an Anti-SLAPP suit against TenCate in New York premised on this action. Ex. 5. That complaint admitted that "Dr. Kyla Bennett . . . was aware of TenCate and [] posted a social media thread in January 2024, regarding a claim by TenCate that its artificial turf is 'PFAS free.'" *Id.* at 21.

Given Defendant Bennett's misrepresentation, TenCate asked the Individual Defendants, in Interrogatory Number 5, to "[i]dentify and describe any and all of Your Social Media posts, reposts, comments, shares, threads, likes, messages, or message responses that reference 'Polyloom Corporation of America,' 'Polyloom,' 'TenCate Grass North America,' or 'TenCate.'" Ex. 3 at 3. In response, Defendant Bennett admitted that she "reposted an article stating 'Tencate starts manufacturing PFAS-free synthetic turf'" and provided a screenshot of three tweets. *Id.* at 3–4.

But, it turns out, even that wasn't the full truth. TenCate discovered through its own independent investigation that Defendant Bennett authored several other tweets about TenCate that she failed to identify in her interrogatory response or in her Anti-SLAPP suit. In those tweets, she denounced, what she described as, TenCate's "BS," accused TenCate of having "unbelievable chutzpah," and accused TenCate of having "GALL." Ex. 6 at 4; Ex. 7. She also seemingly expressed a desire to interfere with TenCate's business relations. Ex. 6 at 4, 6 (saying "buyer beware," "Yes! You're starting to get it, Tencate! We *do* want to ban [PFAS] in everything,"

and "STOP PUTTING IN ACRES OF PLASTIC GRASS"). TenCate discovered those additional tweets through its own investigation.

Pursuant to Rule 37, the parties conferred on this issue. Defendant Bennett refused to supplement her response to Interrogatory Number 5.

## III. LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information "need not be admissible in evidence to be discoverable." *Id.*

If a party fails to produce documents or adequately answer an interrogatory, the party seeking discovery may move for an order compelling answers and production. Fed. R. Civ. P. 37(a)(1), (a)(3)(B). An "evasive" or "incomplete" answer or response "must be treated as a failure" to answer or respond. Fed. R. Civ. P. 37(a)(4). To successfully oppose a motion to compel, the party resisting discovery has the burden to show specifically how each discovery request is objectionable. *United States ex rel. Griffis v. EOD Tech., Inc.*, 2024 WL 3852128, at *2 (E.D. Tenn. Aug. 16, 2024).

## IV. ARGUMENT

The Court should order Defendants to provide complete responses to TenCate's discovery requests and produce all responsive documents. TenCate's requests call for information squarely within the scope of jurisdictional discovery, and neither Grassroots' nor Defendant Bennett's objections have any merit.

### A. The Court Should Compel Production of Grassroots' Webinar Invitations to Tennessee Parties.

The Court should compel Grassroots to produce the emails it sent to Tennessee parties about the Webinar.

7

Request for Production Number 5 asked Grassroots to produce "[a]ll documents and communications, including, but not limited to, those with third parties, related to or consisting of invitations, advertisements, promotion, or marketing materials used in relation to the Webinar." Ex. 2 at 4. Instead of producing all promotional materials, Grassroots averred that it would produce "documents constituting communications *only* between Grassroots and the Individual Defendants, related *only* to the organization of the Webinar." *Id.* (emphases added). In support of that rationale, Grassroots noted the Court's statement that TenCate could "[s]eek production of communications between Defendants related to the organization of the Webinar." Dkt. 52 at 12. That objection fails for two reasons.

First, the Court did not prohibit TenCate from seeking promotional material regarding the Webinar. In fact, the Court's order made "clear [] what Plaintiff may *not* seek." *Id.* at 10. Specifically, the Court delineated three categories of off-limits documents: (1) "documents about Grassroots' intent in making the allegedly defamatory statements," (2) "electronically stored information about the Websites donations, or Webinar registrants," and (3) "information . . . related to the interactivity of the Websites." *Id.* at 10–11.

Yet by Grassroots' logic, the Court tacitly added a fourth prohibition—on documents concerning Webinar *promotion—sub silentio*. But that makes no sense. The Court ordered jurisdictional discovery because there was "an important factual dispute about Defendants' intent." *Id.* at 7. While TenCate averred that Grassroots purposefully availed itself of Tennessee, Defendants provided "affidavits . . . [that] directly contradict this claim." *Id.* The Court thus granted jurisdictional discovery to help determine whether "Defendants were intentionally targeting Tennessee." *Id.* at 11; *see also id.* at 7 (granting jurisdictional discovery to test "Defendants' denial that they expressly aimed their tortious conduct at Plaintiff (and therefore

Tennessee)" (cleaned up)).  Here, Grassroots admits that it has documents showing that it purposefully directed invitations to the Webinar into Tennessee.  That shows that Grassroots "purposefully avail[ed] [itself] of the privilege of acting in the forum state or causing a consequence in the forum state."  *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) (citation omitted).  Accordingly, these documents are at the heart of the inquiry that the Court ordered.

Put differently, the Court allowed TenCate to seek documents "related to the ***organization*** of the Webinar," but prohibited TenCate from seeking electronically stored information "about the . . . Webinar ***registrants***."  Dkt. 52 at 10–12 (emphases added).  Promotion of the webinar is part of organizing the webinar—it is not a veiled attempt to get electronically stored information about registrants.

Second, even if the Court intended to limit production of promotional materials, Grassroots has waived that limitation by seeking to use it both as a sword and a shield.  Although Grassroots' Request for Production Responses indicated that it would produce "documents constituting communications ***only*** between Grassroots and the Individual Defendants, related ***only*** to the organization of the Webinar," Ex. 2 at 4 (emphases added), Grassroots' production did not match that limitation.  In fact, in the 73 pages of documents that Grassroots produced, ***only one page consisted of a communication among the Defendants***.  Ex. 8 at 74.  Many of the other documents consisted of promotional materials directed at entities in the Northeastern United States.  For instance, Grassroots produced email invitations—often entitled "You are invited to national webinar, The Trouble with Turf" or "Free national webinar about artificial turf . . . ."—that it sent to individuals associated with Boston Children's Health Physicians; Westchester County, New York; New York State Association of Conservation Commissions; Zero Waste Ithaca (New York);

9

and New York Towns. Ex. 8 at 3, 4, 19, 41. Accordingly, Grassroots **did produce promotional materials**—it just produced the promotional materials that help **its case** while withholding the promotional materials that would help **TenCate's case**. It would be grossly improper for the record of this case to be limited to documents showing promotion that TenCate conducted in the Northeastern United States merely because Grassroots selectively decided when it wanted to respond to discovery requests. And Grassroots's production of such documents suggests that it thinks its efforts to target the Northeast are relevant to whether it purposefully directed its conduct at Tennessee; its efforts *to target Tennessee* are far more relevant to this question and should be produced.

Grassroots is trying to use the claimed limitation on discovery as a sword and a shield—producing documents that it finds helpful but withholding documents **of the exact same type** that would help TenCate. Courts have roundly rejected that sort of discovery-for-me-but-not-for-thee argument in myriad contexts. *Bradford v. City of Chicago*, 2017 WL 2080391, at *2 (N.D. Ill. May 15, 2017) (recognizing, in the context of a discovery limitation, that a defendant "may not use the Court's limitation on discovery as both a shield and a sword"). *Cf. Wilkinson v. Greater Dayton Reg'l Transit Auth.*, 2014 WL 1908298, at *7 (S.D. Ohio May 9, 2014) (finding in the context of the work product doctrine that a litigant cannot use the privilege "as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion" (citation omitted)); *King v. City of Columbus*, 2019 WL 13516345, at *3 (S.D. Ohio Oct. 31, 2019) (recognizing in the context of the work product doctrine that a litigant cannot "plac[e] into evidence only those portions of privileged materials which are beneficial, and us[e] the privilege to hide away those portions which would benefit the opposing parties" (citation omitted)); *In re Equity Land Title Agency, Inc.*, 326

B.R. 427, 433–34 (Bankr. S.D. Ohio 2005) ("[P]arties cannot avail themselves of the shield of the Fifth Amendment and, having refused to respond to proper discovery requests, collapse, at moments of their choosing, that shield into a sword to be used to attempt to stab holes in the opponent's case."). Put differently, Grassroots cannot aver that TenCate has no evidence of Grassroots' purposeful contact with Tennessee, all the while withholding documents demonstrating Grassroots' purposeful contact with Tennessee. *Cawley v. Eastman Outdoors, Inc.*, 2014 WL 4656381, at *3 (N.D. Ohio Sept. 16, 2014) ("Defendant cannot both complain that Plaintiff lacks documentary evidence and prevent him from obtaining such documents.").

At bottom, Grassroots has admitted that it has evidence that it intentionally directed the Webinar into Tennessee—evidence that should be core to any purposeful-availment determination. The Court should not allow Grassroots to withhold that critical information. It would be absurd for the jurisdictional-discovery process to reveal the presence of critical information, all the while allowing Grassroots to continue hiding that information.

Last, Grassroots' failure to produce those documents will unfairly prejudice TenCate's ability to effectively depose Grassroots. After the Court allowed jurisdictional discovery, TenCate promptly provided Grassroots its discovery requests and then scheduled Grassroots' 30(b)(6) deposition for the end of the discovery period so that it could have Grassroots' pertinent documents in hand when it deposed Grassroots. But Grassroots' decision to withhold those documents hampers TenCate's ability to effectively examine Grassroots and to create a full record providing all the evidence of Grassroots' Tennessee contacts.

## B. Grassroots' Evasive and Incomplete Response to Interrogatory Number 7 Is Deficient, and Its Objections Are Meritless.

The information sought by Interrogatory Number 7 similarly falls within the scope of jurisdictional discovery, and Grassroots has no excuse for its insufficient response. The Court

allowed TenCate to "ascertain[] via . . . interrogatories" "[w]hether Tennessee residents have . . . registered for the Webinar." Dkt. 52 at 11. Accordingly, Interrogatory Number 7 required Grassroots to "[i]dentify all Webinar registrants, including the total number of registrants, their names, and any data . . . tending to show the geographic location of such registrants." Ex. 1 at 5. Yet Grassroots' response did not identify a single Webinar registrant or even provide the total number of registrants. Instead, Grassroots indicated that it "did not inquire about the location of registrants" and that "Zoom does not track or report the location of the Webinar registrants." *Id.* That "evasive" and "incomplete" answer is no answer at all. Fed. R. Civ. P. 37(a)(4).

Grassroots cannot unilaterally narrow the scope of Interrogatory Number 7 to suit its needs. Just because Grassroots allegedly didn't inquire about registrants' locations doesn't mean that it lacks "any data . . . tending to show the geographic location of such registrants." Ex. 1 at 5. For instance—given that Grassroots directly sent promotional emails about the Webinar to individuals in Tennessee, Ex. 4 at 2—it's possible someone signed up with a Vanderbilt email address, which would tend to show further engagement with Tennessee residents and the effect of the defamatory statements in the state. Grassroots' response is manifestly confusing (at best) and misleading (at worst) because it obscures whether Grassroots has made *any* inquiry in answering Interrogatory Number 7 and whether it has responsive information in its possession. TenCate is entitled to the requested information, including the names and email addresses of Webinar registrants, so it can conduct its own investigation and determine the number of registrants that are located in Tennessee.

Grassroots' objections that Interrogatory Number 7 "exceeds the limited jurisdictional inquiry set forth in the Court's Order" and is "overly broad" similarly miss the mark. Ex. 1 at 5. In granting jurisdictional discovery, the Court expressly stated that "[w]hether Tennessee residents

have . . . registered for the Webinar can be ascertained via deposition and interrogatories." Dkt. 52 at 11. So Interrogatory Number 7 fits squarely within the scope of jurisdictional discovery that the Court granted, and these objections should be overruled.

Nor does Grassroots offer any explanation for why answering Interrogatory Number 7 is "unduly burdensome." Ex. 1 at 5. As the party resisting discovery, Grassroots "must show specifically" how answering Interrogatory 7 is burdensome—the "mere statement" that an interrogatory is overly burdensome "is not adequate to voice a successful objection." *Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, 2019 WL 11670621, at *2 (E.D. Tenn. Sept. 18, 2019). Grassroots has failed to do so here: It "has not sufficiently explained" how retrieving and disclosing basic information about Webinar registrants "will be so burdensome as to outweigh the benefit of such discovery." *Id.* Nor can it, given that any unexplained "burden" on Grassroots is slight compared to the resolution of the jurisdictional issues currently before the Court. So this objection fails, too, and should be overruled.

## C. Defendant Bennett Must Fully and Accurately Respond to Interrogatory Number 5.

Like Grassroots, Defendant Bennett has run roughshod over her discovery obligations by refusing to respond to Interrogatory Number 5 fully and accurately. Consistent with the Court's order on jurisdictional discovery, this required Defendant Bennett to "[i]dentify and describe any and all of [her] Social Media posts, reposts, comments, shares, threads, likes, messages, or message responses that reference . . . 'TenCate.'" Ex. 3 at 3. She refused to fully comply. *See* Fed. R. Civ. P. 33(b)(3) (each interrogatory must be "answered separately and fully in writing under oath"); Fed. R. Civ. P. 33 advisory committee's note ("emphasiz[ing] the duty of the responding party to provide full answers" to interrogatories).

As discussed above, while Defendant Bennett identified a single Twitter/X post about TenCate, she failed to identify and describe several other tweets about TenCate from the same

thread—including where she denounced TenCate's products as "BS" and criticized, what she perceived as, TenCate's "chutzpah." *Supra* at 6. Notably, TenCate has been able to locate at least one other social-media post from a different day in 2024 in which she mentioned TenCate. Ex. 7. Defendant Bennett's "evasive and incomplete answer" to Interrogatory Number 5 is "tantamount to no answer at all." *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 210 (E.D. Mich. 2018) (imposing sanctions based on deficient discovery responses); *see also* Fed. R. Civ. P. 37(a)(4).

These obvious omissions raise questions about what other responsive social-media communications Defendant Bennett may have made and omitted to identify that TenCate has not independently found. Not all social media is available publicly, for example, or Defendant Bennett may have social media accounts of which TenCate is not aware. Yet Defendant Bennett has simply defied TenCate's proper request, telling it that it should be able to find public posts itself and that it does not view Defendant Bennett's criticisms of TenCate as actionable defamation. Defendant Bennett "must respond truthfully, fully and completely" to Interrogatory 5 "or explain truthfully, fully and completely why [she] cannot respond." *JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, 2006 WL 3803152, at *5 (S.D. Ohio Nov. 14, 2006). Her "[g]amesmanship to evade answering as required, is not allowed." *Id.*

Defendant Bennett's objection that Interrogatory Number 5 "exceeds the bounds of the Court's Order" has no merit. Ex. 3 at 3. As the Court explained when it granted jurisdictional discovery, "there is an important factual dispute about Defendants' intent" and Defendant Bennett submitted an affidavit that she "never heard of Polyloom prior to the commencement of this action." Dkt. 52 at 7. Accordingly, information showing Defendant Bennett's knowledge of TenCate goes directly to her "intent in participating in the webinar" and her credibility for purposes of resolving the jurisdictional issues before the Court. *See id.* at 9. This objection should be

overruled, and the Court should order Defendant Bennett to respond fully and accurately to Interrogatory Number 5.

## V.  CONCLUSION

TenCate's discovery requests call for information and documents within the scope of jurisdictional discovery, and none of Defendants' objections show otherwise.  Accordingly, the Court should overrule Defendants' objections and compel Grassroots to supplement its responses to Request for Production Number 5 and Interrogatory Number 7, and compel Defendant Bennett to supplement her response to Interrogatory Number 5.

DATED:  July 3, 2025                    Respectfully submitted,


                                        /s/ John T. Cox III
                                        John T. Cox III (*admitted pro hac vice*)
                                        Texas Bar No. 24003722
                                        GIBSON DUNN & CRUTCHER LLP
                                        2001 Ross Avenue, Suite 2100
                                        Dallas, Texas 75201
                                        Telephone: (214) 698-3256
                                        Facsimile: (214) 571-2923
                                        TCox@gibsondunn.com

                                        and

                                        Graham H. Stieglitz (*admitted pro hac vice*)
                                        BURR & FORMAN LLP
                                        Georgia Bar No. 682047
                                        1075 Peachtree Street NE, Suite 3000
                                        Atlanta, Georgia 30309
                                        Telephone: (404) 815-3000
                                        Facsimile: (404) 817-3244
                                        gstieglitz@burr.com

                                        and

                                        Brian C. Neal (BPR No. 022532)
                                        Matthew B. Rogers (BPR No. 038777)
                                        222 Second Avenue South, Suite 2000
                                        Nashville, Tennessee 37201
                                        Telephone: 615-724-3200
                                        Facsimile: 615-724-3290
                                        bneal@burr.com
                                        mrogers@burr.com


                                        **ATTORNEYS FOR PLAINTIFF**

16

**CERTIFICATE OF CONFERENCE**

I certify that on July 2–3, 2025, counsel for TenCate conferred with counsel for Defendants regarding the relief requested in this motion. Counsel indicated that Defendants oppose the relief sought by this motion. *See* Fed. R. Civ. P. 37(a)(1).


*/s/ John T. Cox III*
John T. Cox III

***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

I certify that on July 3, 2025, a true and correct copy of this document was served on all counsel of record Pursuant to Federal Rule of Civil Procedure and Local Rule 5(b)(2)(E) for the United States District Court for the Eastern District of Tennessee.


*/s/ John T. Cox III*
John T. Cox III

***ATTORNEY FOR PLAINTIFF***