UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| POLYLOOM CORPORATION<br>OF AMERICA d/b/a TENCATE GRASS<br>NORTH AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>GRASSROOTS ENVIRONMENTAL<br>EDUCATION, INC. et al.,<br><br>    *Defendants*. | Case No. 1:25-cv-14<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Michael J. Dumitru |

## ORDER

Before the Court is Defendants Grassroots Environmental Education, Inc., Kyla Bennett, Jay Feldman, Sarah Evans, and Patricia Wood's motion to dismiss for lack of personal jurisdiction. (Doc. 29.) For the following reasons, Defendants' motion (*id.*) will be **GRANTED IN PART** and **DENIED IN PART**. Additionally, on or before August 22, 2025, the parties shall file briefs not to exceed fifteen pages regarding whether transfer to the Eastern District of New York is appropriate under 28 U.S.C. § 1404(a).

### I.    BACKGROUND

Plaintiff is a "global group of market-leading companies involved in designing and producing . . . artificial grass surfaces" and "one of the largest designers, producers, distributors, manufacturers, installers, and recyclers of artificial turf in the United States." (Doc. 28, at 3–4.) Defendant Grassroots Environmental Education, Inc. ("Grassroots") is an environmental-advocacy organization that advises the public "on the health risks of common environmental exposures," including artificial turf fields. (*Id.* at 5, 10 (internal quotations and citation

1

omitted).) Plaintiff alleges that Defendants Kyla Bennett, Jay Feldman, Sarah Evans, and Patricia Wood (collectively "the Individual Defendants") also advocate against the use of artificial turf fields. (*See id*. at 2.)

On January 20, 2025, Plaintiff filed the present action, asserting claims for defamation and trade libel as well as tortious interference with prospective business relationships. (*See* Doc. 1.) Plaintiff alleges that Defendants, particularly Grassroots, have defamed it by making (or planning to make) false statements about the health risks of artificial turf fields on Grassroots' two websites ("the Websites"), social media pages, and in an upcoming webinar ("the Webinar"). (*See* Doc. 28.) Plaintiff further alleged that "[Grassroots] has intentionally sent false and defamatory information into Tennessee with the intent of impacting and undermining Plaintiff and its multiple Companies, all of which are headquartered in Tennessee."[1] (*See id*. at 8.)

Defendants moved to dismiss for lack of personal jurisdiction, arguing that they did not have sufficient contacts with Tennessee that could give rise to personal jurisdiction. (*See* Doc. 29.) Defendants also submitted affidavits denying that they intentionally targeted Tennessee or that they even knew Plaintiff existed until the present lawsuit. (*See* Docs. 29-1–29-4.) Because the parties disputed facts necessary to determine whether personal jurisdiction existed, the Court ordered limited jurisdictional discovery and set an evidentiary hearing on Defendants' motion to dismiss. (*See* Doc. 52.) The Court held the evidentiary hearing on Defendants' motion to dismiss on July 14, 2025, and Defendants' motion is now ripe. (*See* Doc. 60.)

---

[1] Plaintiff does not allege that the Individual Defendants sent any defamatory statements into Tennessee. (*See generally* Doc. 28.) In fact, Plaintiff's amended complaint does not identify any statement made by any of the Individual Defendants. (*See generally id*.)

2

## II. ANALYSIS

### A. Personal Jurisdiction

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). If a court orders jurisdictional discovery and holds a hearing to aid in resolving a defendant's motion, "the plaintiff must overcome [the motion to dismiss] by a preponderance of the evidence," rather than by only making a prima facia showing that personal jurisdiction exists. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (citation omitted). Furthermore, when a plaintiff asserts claims against multiple defendants, "[p]ersonal jurisdiction must be analyzed and established over each defendant independently." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citation omitted).

"The court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). Tennessee's long-arm statute, Tennessee Code Annotated § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by the Due Process Clause. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645–46 (Tenn. 2009); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). Therefore, the Court only needs to determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

3

"Due process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to accord with 'traditional notions of fair play and substantial justice.'" *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (citations omitted). "[W]hether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." [2] *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). Specific jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum State" because due process "principally protect[s] the liberty of the nonresident defendant—not the convenience of plaintiffs." *Id.* at 284 (quotations and citations omitted).

The Sixth Circuit has articulated a three-part test for analyzing specific jurisdiction:

[1] the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

[2] the cause of action must arise from the defendant's activities there.

[3] the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods. & Controls, Inc.*, 503 F.3d at 550).

The *Calder* effects test governs purposeful availment in intentional tort cases. *See Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021). Under *Calder*, a defendant purposefully availed herself of the privilege of acting in a forum state if she "'expressly aimed' [her] tortious acts at the forum [state]." *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). The fact that an injury occurred on a plaintiff's home turf does not necessarily mean that there is personal jurisdiction over a defendant. *See Air Prods. & Controls, Inc.*, 503 F.3d at 552 (noting that "the mere allegation of

---

[2] Plaintiff does not allege that there is general jurisdiction over Defendants. (*See generally* Doc. 28.) Accordingly, the Court's will only examine whether there is specific personal jurisdiction over Defendants.

intentional tortious conduct which has injured a forum resident" is not enough to establish personal jurisdiction under *Calder*). Nor is it enough that a defendant "could foresee" that an injury would occur in the forum state. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994). Instead, the plaintiff must present evidence of intent by the defendant to expressly target the forum state. *See Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005).

The Sixth Circuit has held that *Calder* is satisfied when a defendant intentionally directs communications such as calls, texts, or emails into the forum state, provided that "these communications constitute the core of [the plaintiff's claims]." *Power Invs., LLC*, 927 F.3d at 919; *see also Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001) ("[W]e hold that when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state."). However, a defendant's social media posts discussing the resident of a given forum state are typically not enough to satisfy *Calder*.[3] *See Blessing*, 988 F.3d at 906 (defendants' tweets about the Kentucky plaintiffs "formed no contacts [with Kentucky]"). For social media posts to satisfy *Calder*, a plaintiff must produce evidence that a defendant "took affirmative steps to direct the posts to a [forum state's] audience." *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015).

---

[3] This is true even if the injury caused by the media posts is felt in the forum state. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 864 (E.D. Mich. 2019) ("[The defendant] may have known the harm from his tweet would be felt in Michigan. But that does not suffice to require [the defendant] to defend the [plaintiffs'] claims in Michigan.").

5

Plaintiff asserts that the emails Grassroots directed into Tennessee satisfy the *Calder* effects test.[4] (*See* Docs. 47, 63.) The Court agrees.

Plaintiff has presented evidence showing that Grassroots engaged in a deliberate process to direct its allegedly defamatory statements into Tennessee. Grassroots corporate representative Douglas Wood testified that Grassroots sent an email promoting the Webinar to approximately 1500 people in all 50 states. (*See* Hearing Transcript, at 12.) Lauren Krueger, Grassroots' Communications Coordinator, was responsible for identifying people to invite in Tennessee (among other states). (*See id.* at 14.) Woods directed Krueger to "scour[] the internet" for people to invite in Tennessee. (*Id.*; Doc. 63-2, at 8.) Krueger identified thirteen Tennesseans to invite. (*See* Doc. 63-3, at 2.) These people were members of the Tennessee Organization of School Superintendents, the Tennessee School Board Association, Associated General Contractors of Tennessee, and the University of Tennessee Institute for Public Service. (*See id.*; Hearing Transcript, at 20–26.)

---

[4] Plaintiff argues that Grassroots' websites also subject it to personal jurisdiction under the *Zippo* test. (*See* Doc. 63.) This theory rests upon shaky ground given the limited evidence of interactivity that Plaintiff presented during the evidentiary hearing. However, because the Court has determined that Plaintiff has satisfied *Calder*, it need not decide the issue today. Additionally, the *Zippo* theory does not apply to the Individual Defendants, because Plaintiff does not allege that they owned and operated interactive websites. (*See* Doc. 28.)

6

Grassroots sent each person the following email:



(Doc. 63-3, at 2–3.) The email asserts that there is "science linking artificial turf fields with serious human health and environmental problems." (*Id.*) Grassroots attached the following promotional flier to the email:



(*See id.* at 4.) In the flier, Grassroots asserts that "[t]he debate over the safety and environmental impact of artificial turf fields is going on in communities across the country, driven by new science showing significant health and safety impacts for young athletes and startling new evidence of widespread plastic and PFAS pollution." (*Id.*) The flier also contains a link to a Grassroots webpage that Plaintiff argues contains the allegedly defamatory statements at the heart of this matter. (*Id.*)

Grassroots has purposefully availed itself of the privilege of acting in Tennessee by taking affirmative steps to identify Tennessee residents and directing allegedly defamatory emails into Tennessee. This case is analogous to *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001). In *Neal*, the plaintiffs claimed that the defendant had "intentionally defrauded them in phone calls and faxes directed to plaintiffs or their agents in Tennessee." 270 F.3d at 332. The Sixth Circuit held that the defendant had purposefully availed himself of acting in Tennessee, explaining "that when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state." *Id.* at 333; *see also Power Invs., LLC*, 927 F.3d at 918–19 (finding purposeful availment when a defendant directed allegedly fraudulent communications into Kentucky).[5]

---

[5] Plaintiff argues that *Calder* is not satisfied because Grassroots did not know Plaintiff was based in Tennessee. When applying *Calder*, Courts have indeed considered whether a defendant knew where a plaintiff resided or did business. *See, e.g.*, *Reynolds*, 23 F.3d at 1120. However, courts have done so only to establish whether a defendant knew it was directing its actions at the forum state. *See id.* Here, there is no dispute that Plaintiff knew it was sending emails into Tennessee. (*See* Doc. 63-3.)

8

Here, as in *Neal*, Grassroots directed allegedly tortious communications into Tennessee and these communications form the heart of the case. [6] [7]

The Individual Defendants, however, are a different matter. Plaintiff has not presented any evidence that the Individual Defendants took part in the decision to send the thirteen emails to Tennessee residents. (*See* Doc. 63-3, at 4.) Plaintiff also does not present evidence that Feldman, Evans, or Wood directed any statement at Tennessee or otherwise took any action that could constitute purposeful availment. Indeed, Plaintiff's counsel conceded at the evidentiary hearing that she "cannot link" Feldman, Evans, or Wood to Tennessee in the same way she could Grassroots or Bennett. (Hearing Transcript, at 95.) Accordingly, Plaintiff has failed to carry its burden of proving by a preponderance of the evidence that Feldman, Evans, or Wood purposefully availed themselves of the privilege of acting in Tennessee.

Additionally, while Plaintiff identifies several allegedly defamatory statements Bennett made on Twitter, the posts do not satisfy *Calder*. (*See* Plaintiff's Exhibit 18.) Social media posts only satisfy *Calder* when there is evidence that they are "expressly aimed . . . at the forum

---

[6] The outcome likely would be different if Grassroots had not actively searched for and reached out to specific individuals in Tennessee. For instance, it is doubtful that *Calder* would be satisfied if Grassroots had merely promoted the Webinar to its general social media audience or sent the promotion to a mailing list which Tennesseans had signed up for. *See Walden*, 571 U.S. at 284 (holding that jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum State"); *Blessing*, 988 F.3d at 906 (tweets to general online audience do not constitute purposeful availment regarding a specific state).

[7] Grassroots also argues that there is no personal jurisdiction because these thirteen emails are a small fraction of the 1500 emails it sent. (Hearing Transcript, at 61–62.) However, the Sixth Circuit has explained that "[a] numerical count of [] calls and letters has no talismanic significance: The quality of the contacts as demonstrating purposeful availment is the issue, not their number." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) (citation and internal quotations omitted). A handful of contacts, if they are significant enough, can establish personal jurisdiction. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002) (rejecting a defendant's argument that its "14 yearly contracts with Michigan customers were insufficient to establish personal jurisdiction").

[state]," rather than a general online audience. *Power Invs., LLC*, 927 F.3d at 919 (internal quotations omitted); *see also Blessing*, 988 F.3d at 906 (no personal jurisdiction when the plaintiffs had presented "no evidence that the defendants posted the tweets hoping to reach Kentucky specifically as opposed to their Twitter followers generally."). Bennett's posts do not reference Tennessee or otherwise suggest an intent to specifically target a Tennessee audience. (*See* Plaintiff's Exhibit 18.) Bennett's tweets discuss and are alleged to have injured a Tennessee company, but both the Supreme Court and the Sixth Circuit have made clear this is not enough. *See Walden*, 571 U.S. at 290 ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections"); *Reynolds*, 23 F.3d at 1120 (a defendant's press release about an Ohio resident which allegedly caused an injury in Ohio did not satisfy *Calder*). Plaintiff has failed to carry its burden of proving by a preponderance of the evidence that Bennett purposefully availed herself of the privilege of acting in Tennessee.

Because Plaintiff has proven by a preponderance of the evidence that personal jurisdiction over Grassroots is proper, Defendants' motion to dismiss will be denied as to Grassroots.[8] However, Plaintiff has not carried its burden of proving that personal jurisdiction is

---

[8] Defendants' motion to dismiss focuses solely on the "purposefully availment" prong of the personal jurisdiction test. (*See generally* Doc. 30.) However, at the hearing, Defendants appeared to raise an issue not argued in its briefing: that the exercise of jurisdiction over Defendants would be unreasonable and would not be in "accord with traditional [ ] notions of fair play and substantial justice." (Hearing Transcript, at 105.) The Sixth Circuit has held that a party waives an argument when it does not raise it in its main brief. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) (deeming arguments that are not raised in main brief, or raised merely in a perfunctory manner, as waived). Defendants have had ample opportunity to raise this argument. Indeed, this is Defendants' second motion to dismiss for lack of personal jurisdiction. (*See* Doc. 17.) The Court will not consider a new argument long after Defendants' motion has been fully briefed.

proper over the Individual Defendants. Accordingly, Defendants' motion to dismiss will be granted as to the Individual Defendants.

### B. *Forum Non Conveniens*

28 U.S.C. § 1404(a) "is a codification of th[e doctrine of *forum non conveniens*]." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 50 (2013). The statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "28 U.S.C. § 1404(a) does not require a motion; a district court may transfer a case sua sponte." *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1291 (6th Cir. 1989).

In determining whether to transfer an action, "[t]he threshold consideration is whether the action is one that could have originally been brought in the proposed transferee district court." *Functional Pathways of Tennessee, LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 930 (E.D. Tenn. 2012). At the next step, "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice." *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citations and internal quotations omitted). Specifically, these factors include:

> (1) convenience of the witnesses;
> (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses;
> (3) location of the relevant documents or records, and the relative ease of access to sources of proof;
> (4) residence and convenience of the parties;
> (5) relative financial means and resources of the parties;
> (6) locus of the operative facts and events that gave rise to the dispute or lawsuit;

11

(7) each judicial forum's familiarity with the governing law;

(8) the deference and weight accorded to the plaintiff's choice of forum; and

(9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Functional Pathways of Tennessee, LLC*, 866 F. Supp. 2d at 930–31 (citations omitted). "The convenience of the witnesses is often considered the most important factor" in a court's analysis. *Id*. at 193 (citations omitted).

Based on Grassroots' arguments during the evidentiary hearing, the Court finds it necessary to order briefing on whether this matter should be transferred to the Eastern District of New York pursuant 28 U.S.C. § 1404(a).[9]  During the hearing, Grassroots argued that the burden for it to litigate this matter in Tennessee would be "tremendous" and unreasonable given that it is a non-profit organization run by unpaid volunteers.  (Hearing Transcript, at 105, 107, 108.)  Defendant further argued that New York was an adequate alternative forum and that "all of the witnesses are in New York, all of the evidence is in New York." (*Id*. at 108.)  These arguments directly implicate the factors considered in 28 U.S.C. § 1404(a).  *See Atl. Marine Const. Co.*, 571 U.S. at 63 n.6 (listing factors).

Accordingly, the parties shall brief the Court on their position as to whether transfer to the Eastern District of New York is appropriate under 28 U.S.C. § 1404(a) on or before August 22, 2025.

### III. CONCLUSION

For the above reasons, Defendant's motion to dismiss for lack of personal jurisdiction (Doc. 29) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims against

---

[9] While the parties have not yet briefed this issue, it appears that this action could have been brought in the Eastern District of New York because that is where Grassroots is headquartered and where it made the allegedly defamatory statements. (*See* Doc. 28, at 1.)

Defendants Kyla Bennett, Jay Feldman, Sarah Evans, and Patricia Wood are **DISMISSED WITHOUT PREJUDICE**. Only Plaintiff's claims against Grassroots remain. Additionally, the parties shall file briefs not to exceed fifteen pages regarding whether transfer to the Eastern District of New York is appropriate under 28 U.S.C. § 1404(a) on or before August 22, 2025.

    **SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**