# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

POLYLOOM CORPORATION OF     §
AMERICA d/b/a TenCate Grass North     §
America,     §
    §
*Plaintiff*,     §       **DOCKET NO. 1:25-CV-00014**
    §
v.     §
    §
GRASSROOTS ENVIRONMENTAL     §
EDUCATION, INC., DR. KYLA     §
BENNETT, JAY FELDMAN,     §
DR. SARAH EVANS, and PATRICIA     §
WOOD,     §

*Defendants*.

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TRANSFER</u>

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................ 1

II.    BACKGROUND ................................................................. 2

III.   LEGAL STANDARD ........................................................... 3

IV.   ARGUMENT ..................................................................... 3

    A.    New York Is Not an Appropriate Forum ................................. 3

    B.    The Private-Interest Factors Do Not Favor Transfer ................. 5

        1.    Convenience of Witnesses ....................................... 5

        2.    Availability of Judicial Process ................................ 8

        3.    Accessibility of Evidence ....................................... 9

        4.    Convenience of the Parties and Plaintiff's Forum Choice ......... 9

        5.    Financial Means of the Parties ................................. 10

        6.    Locus of Operative Facts ....................................... 12

    C.    The Public-Interest Factors Favor Not Transferring this Case. ........ 13

        1.    Local Interest ................................................. 13

        2.    Location of the Injury ......................................... 14

        3.    Docket Congestion ............................................. 14

        4.    Preference for Trying Cases in the Place of the Governing Law ........... 15

V.    CONCLUSION.................................................................. 15

CERTIFICATE OF SERVICE ....................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*,
   503 F.3d 544 (6th Cir. 2007) ................................................................................................4

*AMF, Inc. v. Computer Automation, Inc.*,
   532 F. Supp. 1335 (S.D. Ohio 1982) ....................................................................................11

*Bell v. Rosen*,
   2015 WL 5595806 (S.D. Ga. Sept. 22, 2015)........................................................................12

*Blue Diamond Coal Co. v. United Mine Workers of Am.*,
   282 F. Supp. 562 (E.D. Tenn. 1968)..................................................................................1, 11

*Bluecross Blueshield of Tenn., Inc. v. Dunwoody Labs, Inc.*,
   2021 WL 6275252 (E.D. Tenn. Mar. 8, 2021) ................................................6, 9, 12, 13, 14

*Boehner v. Heise*,
   410 F. Supp. 2d 228 (S.D.N.Y. 2006)....................................................................................13

*Canal Ins. Co. v. Schaefer*,
   2024 WL 666490 (M.D. Tenn. Feb. 16, 2024) ....................................................................3, 4

*CapitalPlus Equity, LLC v. Espinosa Grp., Inc.*,
   2018 WL 11241973 (E.D. Tenn. Aug. 2, 2018) .....................................................................4

*Dowlen v. Mathews*,
   2003 WL 1129558 (Tenn. Ct. App. Mar. 14, 2003) ..............................................................6

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017)....................................................................................................15

*Eusner v. Sullivan*,
   2021 WL 5830020 (E.D. Ky. Dec. 7, 2021) ..........................................................................2

*Fluidtech, Inc. v. Gemu Valves, Inc.*,
   457 F. Supp. 2d 762 (E.D. Mich. 2006).................................................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................................................4

*Gubarev v. Buzzfeed, Inc.*,
   253 F. Supp. 3d 1149 (S.D. Fla. 2017) ..................................................................................13

*Hefferan v. Ethicon Endo-Surgery Inc.*,
   828 F.3d 488 (6th Cir. 2016) ..................................................................................................9

*Hoffman v. Blaski*,
   363 U.S. 335 (1960)........................................................................................................1, 4, 5

Case 1:25-cv-00014-TRM-MJD   Document 67   Filed 08/22/25   Page 3 of 22   PageID #: 867

*Kendle v. Whig Enters., LLC*,
   2016 WL 354876 (S.D. Ohio Jan. 29, 2016) ...................................................................8

*Lalewicz v. WarnerMedia Direct, LLC*,
   742 F. Supp. 3d 781 (E.D. Tenn. 2024) ...............................................................1, 3

*Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC*,
   2016 WL 7209553 (E.D. Tenn. Dec. 12, 2016) ............................................................11

*Moore v. Rohm & Haas Co.*,
   446 F.3d 643 (6th Cir. 2006) ...................................................................................3

*Ostevoll v. Ostevoll*,
   2000 WL 1611123 (S.D. Ohio Aug. 16, 2000) ............................................................11

*Performance Contracting, Inc. v. DynaSteel Corp.*,
   2012 WL 1666394 (E.D. Mich. May 9, 2012) ............................................................9

*Prevent USA Corp. v. Volkswagen AG*,
   17 F.4th 653 (6th Cir. 2021) .........................................................................3, 11, 13

*Process Church of Final Judgment v. Sanders*,
   338 F. Supp. 1396 (N.D. Ill. 1972) ..................................................................8, 12, 14

*Reese v. CNH Am. LLC*,
   574 F.3d 315 (6th Cir. 2009) ...................................................................................5

*Ruffin-Steinback v. dePasse*,
   82 F. Supp. 2d 723 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th Cir. 2001) .........................13

*Sardeye v. Wal-Mart Stores E., LP*,
   2019 WL 4276990 (M.D. Tenn. Sept. 10, 2019) ...................................................1, 3, 10

*Smith v. Kyphon, Inc.*,
   578 F. Supp. 2d 954 (M.D. Tenn. 2008) ..................................................................13

*Steele v. Ritz*,
   2009 WL 4825183 (Tenn. Ct. App. Dec. 16, 2009) ......................................................5, 15

*Thaxton v. Bojangles' Restaurants, Inc.*,
   2018 WL 11240503 (E.D. Tenn. Dec. 13, 2018) ..........................................................10

*TVMS, Inc. v. Kingsport Book, LLC*,
   2019 WL 13195858 (E.D. Tenn. Dec. 9, 2019) ........................................................3, 10

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .............................................................................................15

## Statutes

28 U.S.C. § 1404 ............................................................................................................3

**Other Authorities**

*Chapter Headquarters*, THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, https://www.tnagc.org/chapter-headquarters (last visited Aug. 22, 2025) ...............................8

*Contact Us*, TENCATE GRASS, https://tencategrass.com/contact-us/ (last visited Aug. 22, 2025) ................................................................................................................2

*Jennifer Finley*, LINKEDIN, https://www.linkedin.com/in/jennifer-finley-734424113 (last visited Aug. 22, 2025)........................................................................8

*Kaylah White*, LINKEDIN, https://www.linkedin.com/in/kaylah-brown-white-141a9531 (last visited Aug. 22, 2025) .........................................................................8

*Legislative Brief*, TENNESSEE COMPTROLLER OF THE TREASURY (Oct. 2021), https://comptroller.tn.gov/content/dam/cot/orea/advanced-search/2021/CollaborativeConferencingBrief .........................................................................8

*MTAS Staff*, UNIVERSITY OF TENNESSEE INSTITUTE FOR PUBLIC SERVICE, https://www.ips.tennessee.edu/mtas-staff (last visited Aug. 22, 2025) ....................8

*Staff*, TENNESSEE ORGANIZATION OF SCHOOL SUPERINTENDENTS, https://www.tosstn.com/staff (last visited Aug. 22, 2025).........................................8

*TSBA Team*, TENNESSEE SCHOOL BOARDS ASSOCIATION, https://tsba.net/about/tsba-team/ (last visited Aug. 22, 2025)..................................8

U.S. DISTRICT COURTS–CIVIL FEDERAL JUDICIAL CASELOAD STATISTICS (Mar. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-1 .................................................................................14

U.S. DISTRICT COURTS–CIVIL FEDERAL JUDICIAL CASELOAD STATISTICS (Mar. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-5 .................................................................................14

**Rules**

Fed. R. Civ. P. 37.............................................................................................................4, 5

Fed. R. Civ. P. 45................................................................................................................9

**Treatises**

Restatement (Second) of Torts § 564A (1977) .............................................................15

## I.    INTRODUCTION

This case should not be transferred to New York because it would be legal error and would flout the private- and public-interest factors. 28 U.S.C. § 1404(a) allows transfer only when the action "might have been brought" in the transferee forum "***when suit was instituted***." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (cleaned up) (emphasis added). But when this suit was instituted, New York lacked personal jurisdiction over Defendants Bennett, Feldman, and Evans. Because TenCate could not have brought this action in New York, the case cannot be transferred there.

Transfer would also improperly shift any inconvenience onto TenCate and flout the private- and public-interest factors. As this Court has put it previously, "[t]ransfer under § 1404(a) is [] inappropriate where it would serve only to transfer the inconvenience from one party to the other." *Lalewicz v. WarnerMedia Direct, LLC*, 742 F. Supp. 3d 781, 785 (E.D. Tenn. 2024) (McDonough, J.) (quoting *Sardeye v. Wal-Mart Stores E., LP*, 2019 WL 4276990, at *3 (M.D. Tenn. Sept. 10, 2019)). That is exactly the case here. While transfer might be slightly more convenient for Grassroots Environmental Education, Inc. ("Grassroots"), it would inconvenience TenCate and fly in the face of the "well established principle of law" that the plaintiff has a "right . . . to select the forum for the trial of his case." *Blue Diamond Coal Co. v. United Mine Workers of Am.*, 282 F. Supp. 562, 563 (E.D. Tenn. 1968). Further, transfer would move this case away from the locus of operative facts and inconvenience more than a dozen non-party and party witnesses—forcing this case into a highly congested forum that is less familiar with the unsettled questions of Tennessee law that require resolution in this case.

Grassroots' conclusory claim of undue financial hardship—the primary reason for this briefing—is entirely contrived. Grassroots purposefully ***doubled*** litigation expenses by filing a parallel suit in New York state court, despite a lack of jurisdiction over TenCate there. A party that has ample funds to finance duplicative litigation cannot cry hardship at the prospect of

purchasing flights to Tennessee. In any event, financial status is only one factor that cannot outweigh the remaining factors that favor not transferring this case. *Eusner v. Sullivan*, 2021 WL 5830020, at \*5 (E.D. Ky. Dec. 7, 2021) ("[T]he fact that one party has less means to litigate than another party is not sufficient on its own to require transfer.").

## II.     BACKGROUND

TenCate chose to file this suit in its home forum. Dkt. 28 at 3 (Tennessee "is home to Plaintiff's headquarters where it employs a significant number of employees").[1] Grassroots made defamatory statements on its website, including statements about (1) the materials used in synthetic turf and their recyclability; (2) the presence of PFAS and lead in synthetic turf; and (3) the use of pesticides in cleaning synthetic turf. *Id.* at 10–12. Grassroots also orchestrated a Webinar involving those same topics. Dkt. 55-2 at 5–6.

To find Webinar invitees, Grassroots "scour[ed] the Internet" for Tennessee invitees. Dkt. 63-2 at 7–8. Grassroots then sent invitations to thirteen Tennessee residents, each of whom was associated with a Tennessee organization related to schools, universities, or the construction industry. Dkt. 63-3 at 2–3. That invitation criticized synthetic turf and directed readers to view the webpage containing the defamatory statements. *Id.* at 4. As the Court put it, "Grassroots directed allegedly tortious communications into Tennessee and these communications ***form the heart of the case***." Dkt. 65 at 9 (emphasis added). TenCate alleges that, due to that conduct, it sustained reputational injuries in Rhea County, where it is headquartered. Dkt. 28 at 3, 14.

Grassroots moved to dismiss this case for lack of personal jurisdiction on March 20, 2025. Dkt. 29. On May 27, the Court granted TenCate jurisdictional discovery. Dkt. 52. After that

---

[1] Grassroots has wrongly claimed that "TenCate's website shows its headquarters are in the Netherlands." Dkt. 49 at 6 n.5. But that Website is of "TenCate Grass Holding B.V.," which is not a plaintiff in this case. *Contact Us*, TENCATE GRASS, https://tencategrass.com/contact-us/ (last visited Aug. 22, 2025).

discovery revealed purposeful availment of Tennessee by Grassroots, on July 29, the Court denied the motion to dismiss as to Grassroots and granted it as to the Individual Defendants.  Dkt. 65.  In addition, the Court directed the parties to "brief the Court on their position as to whether transfer to the Eastern District of New York is appropriate under 28 U.S.C. § 1404(a)."  *Id.* at 12.

### III.    LEGAL STANDARD

To determine whether transfer is appropriate, courts must determine whether the case "might have been brought" in the transferee court and then balance the "private interests of the parties" and "public-interest concerns."  *Sardeye*, 2019 WL 4276990, at *3 (cleaned up).  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id.* (cleaned up).  Even when a court "consider[s] sua sponte transfer of [a] case," the "burden of proof in arguing for transfer is on defendant."  *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006) (cleaned up); *see also Lalewicz*, 742 F. Supp. 3d at 785 (party "requesting the transfer" has "substantial burden of proving that transfer is warranted" (cleaned up)).

### IV.    ARGUMENT

TenCate first considers whether the action "might have been brought" in New York.  28 U.S.C. § 1404(a).  Then TenCate considers the "private and public interest factors."  *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 658 (6th Cir. 2021).

### A.    New York Is Not an Appropriate Forum.

The Court must first determine whether this case "might have been brought" in the Eastern District of New York.  28 U.S.C. § 1404(a).  "An action 'might have been brought' in another court for purposes of 28 U.S.C. § 1404(a)" if, among other things, "the court would have personal jurisdiction of the defendants."  *TVMS, Inc. v. Kingsport Book, LLC*, 2019 WL 13195858, at *3 (E.D. Tenn. Dec. 9, 2019) (cleaned up).  Grassroots, "as the party seeking transfer to a different district under § 1404(a), . . . bears the prima facie burden to prove that personal jurisdiction is

appropriate for all defendants in the transferee court." *Canal Ins. Co. v. Schaefer*, 2024 WL 666490, at *4 (M.D. Tenn. Feb. 16, 2024). And in that analysis, the Court looks to "the situation which existed **when suit was instituted**." *Hoffman*, 363 U.S. at 343 (cleaned up) (emphasis added); *accord CapitalPlus Equity, LLC v. Espinosa Grp., Inc.*, 2018 WL 11241973, at *3 (E.D. Tenn. Aug. 2, 2018) (asking whether action could have "originally been brought" in transferee court).

Here, the Eastern District of New York would have lacked personal jurisdiction over the Individual Defendants. Specifically, this suit was originally filed against Dr. Kyla Bennett, Jay Feldman, and Dr. Sarah Evans, Dkt. 1, who are domiciled in Massachusetts, Washington, D.C., and Connecticut. Dkt. 55-6 at 4–5. Accordingly, the Eastern District of New York would not have had general jurisdiction over them. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("[T]he paradigm forum for . . . general jurisdiction is the individual's domicile.").

Neither would the Eastern District of New York have had specific personal jurisdiction over Bennett, Feldman, and Evans. For specific personal jurisdiction to be present, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (citation omitted). As the Court put it, to show purposeful availment, the party with the burden "must present evidence of intent by the defendant to expressly target the forum state." Dkt. 65 at 5. But there is no evidence that the Individual Defendants intended to target New York with the Webinar or planned to travel to New York to participate in the Webinar.

All of Grassroots' potential counterarguments would be futile. First, if Grassroots provided some previously undisclosed evidence of the Individual Defendants' intent to target New York, the Court would have to disregard that evidence, which Grassroots previously refused to produce. Dkt. 58 at 2; Fed. R. Civ. P. 37(c)(1). Second, it does not matter whether the Individual Defendants

hypothetically would have consented to personal jurisdiction in New York. "[T]he power of a District Court under [§] 1404(a) to transfer an action to another district is made to depend **not upon the wish or waiver of the defendant**." *Hoffman*, 363 U.S. at 343–44 (1960) (emphasis added).

In short, a New York court would not have had personal jurisdiction over Defendants Bennett, Feldman, and Evans. Notably, it *also* would not have had personal jurisdiction over TenCate except as a result of TenCate affirmatively consenting by filing suit there. Since TenCate did not so consent, it would violate TenCate's due process rights to force it into New York court.

## B.     The Private-Interest Factors Do Not Favor Transfer.

The Court directed the parties to examine the (1) "convenience of the witnesses," (2) "availability of judicial process to compel the attendance of unwilling or uncooperative witnesses," (3) "location of the relevant documents or records, and the relative ease of access to sources of proof," (4) "residence and convenience of the parties," (5) "relative financial means and resources of the parties," (6) "locus of the operative facts and events that gave rise to the dispute or lawsuit," and (7) "deference and weight accorded to the plaintiff's choice of forum." Dkt. 65 at 11–12. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

### 1.     Convenience of Witnesses

Tennessee is a more convenient forum for the majority of witnesses.

First, Tennessee is a more convenient forum for TenCate's employee witnesses. In a defamation case, the plaintiff must prove falsity. *Steele v. Ritz*, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009). And where, as here, defamatory statements concern a product, the plaintiff typically possesses evidence showing falsity. For instance, Grassroots made claims about (1) the materials used in synthetic turf and their recyclability; (2) the presence of PFAS and lead in synthetic turf; and (3) the use of pesticides in cleaning synthetic turf. *Id.* at 10–12. To show

that those statements are false, TenCate's own witnesses will need to provide evidence about the materials used in its turf, the recyclability of its turf, PFAS testing that it conducted on its own turf, and its recommended cleaning procedures and substances. *Id.* (citing, as evidence, TenCate's "turf recycling processes" and "Plaintiff's current products"). Further, defamation often requires proof of damages. *Dowlen v. Mathews*, 2003 WL 1129558, at *4 (Tenn. Ct. App. Mar. 14, 2003). TenCate's own witnesses will be needed to establish how Grassroots' defamatory statements harmed it. TenCate has identified the following witnesses with relevant information on each topic:

1. **Joe Fields**: Mr. Fields, TenCate's CEO, has knowledge of the recyclability of, and recommended procedures for, cleaning TenCate's synthetic turf. Affidavit of Joe Fields (attached hereto) (hereinafter "Fields Aff.") ¶¶ 2, 4. He also has knowledge of TenCate's finances, which is relevant to damages. *Id.* ¶ 5.

2. **Mark Haft**: Mr. Haft, TenCate's Vice President of Engineering, Quality and Technology—Americas, oversees research of the materials that comprise TenCate's synthetic turf (including their PFAS and lead content) and recommended cleaning procedures for TenCate's synthetic turf. *Id.* ¶ 7.

3. **Colin Young**: Mr. Young is the Global Director of Research and Development at TenCate Grass Holding B.V., an entity associated with TenCate, and he is tasked with overseeing research of the materials that comprise TenCate's synthetic turf (including their PFAS and lead content) and with determining recommended cleaning procedures for TenCate's synthetic turf. *Id.* ¶ 9.

Mr. Fields and Mr. Haft work primarily in TenCate's offices in Chattanooga, Tennessee; Dayton, Tennessee; and Dalton, Georgia. *Id.* ¶¶ 3, 8. Mr. Young works primarily out of the Netherlands, but he regularly travels to and works out of TenCate's offices in Chattanooga, Dayton, and Dalton. *Id.* ¶ 10. The substantial presence of TenCate witnesses near Chattanooga weighs against transfer.

Second, Tennessee is more convenient for non-party witnesses. "Witness convenience is one of the most important factors in the transfer analysis, and it is the convenience of *non-party* witnesses . . . that most concerns the court." *Bluecross Blueshield*, 2021 WL 6275252, at *10 (cleaned up). The burden is on "the party seeking the transfer" to "clearly specify the essential witnesses to be called and [to] make a general statement of what their testimony will cover." *Id.*

Here, TenCate has lodged a tortious-interference claim, Dkt. 28 at 15, and discovery revealed that Grassroots committed that tort in part by sending an email linking to the defamatory statements to parties related to schools, universities, and the construction industry, TenCate's relevant customer base. Dkt. 63-3. Thirteen non-party witnesses in Tennessee received that communication:

1. **Dr. Gary Lilly**: Lilly is the Executive Director of the Tennessee Organization of School Superintendents ("TOSS"). His business address is in Nashville.

2. **Barry Olhausen**: Olhausen is the Assistant Executive Director (Superintendent Leadership Institute) of TOSS. His business address is in Nashville.

3. **Dr. Wanda Shelton**: Shelton is the Assistant Executive Director (Associate Leadership Institute) of TOSS. Her business address is in Nashville.

4. **Virginia Nash**: Nash appears to have served as the Director of Communications & Public Affairs of TOSS; her business address is in Nashville.

5. **Grace Rogers**: Rogers is the CEO of the Tennessee Chapter of the Associated General Contractors of America; her business address is in Nashville.

6. **Kaylah White**: White is the Executive Director of the Associated General Contractors of Tennessee—Middle Tennessee Branch; White works in Nashville.

7. **Jennifer Finley**: Finley is the Associate Director of the Associated General Contractors of Tennessee—Middle Tennessee Branch; Finley works in Nashville.

8. **Doug Brown**: Brown serves as the Training and Development Coordinator for the University of Tennessee's Municipal Technical Advisory Service (MTAS). His business address is in Knoxville.

9. **John Chlarson**: Chlarson is the Public Works Consultant for MTAS. His business address is in Knoxville.

10. **Yolanda Dillard**: Dillard serves as the Training and Development Consultant for MTAS. Her business address is in Knoxville, Tennessee.

11. **Cyndy Edmonds**: Edmonds serves as the Online Training Specialist for MTAS. Her business address is in Knoxville.

12. **Kelley Myers**: Myers serves as the Municipal Codes Coordinator for MTAS. Her business address is in Knoxville.

7

13. **Dr. Tammy (Grissom) Ganger**:  Ganger is the Executive Director of the Tennessee School Boards Association; Ganger's business address is in Nashville.[2]

The testimony of each witness would cover their receipt of Grassroots' communication, and any actions they took in light of that communication.  These witnesses are especially relevant to damages, given their geographic proximity to TenCate and relation to TenCate's relevant customer base.  Given the presence of those thirteen non-party witnesses, Tennessee is a more convenient forum for non-party witnesses.  *Process Church of Final Judgment v. Sanders*, 338 F. Supp. 1396, 1400–01 (N.D. Ill. 1972) (declining to transfer libel case to "New York, the home state of the publisher and author" because it "makes infinitely more sense to convene a [defamation] trial" where "the witnesses of the plaintiff's reputation and the damage thereto are available").

Grassroots cannot plausibly identify a similar number of non-party witnesses in New York[3] for whom it can articulate a similar degree of relevance.  Thus, this factor cannot favor transfer.

### 2.     Availability of Judicial Process

This Court could compel the thirteen non-party witnesses to attend trial—the Eastern District of New York could not.  Federal Rule of Civil Procedure 45(c)(1)(A)–(B) allows a court

---

[2] The above information about each witness can be found at the following sources: *Staff*, TENNESSEE ORGANIZATION OF SCHOOL SUPERINTENDENTS, https://www.tosstn.com/staff (last visited Aug. 22, 2025); *Legislative Brief*, TENNESSEE COMPTROLLER OF THE TREASURY, at 34 (Oct. 2021), https://comptroller.tn.gov/content/dam/cot/orea/advanced-search/2021/Collaborative ConferencingBrief.pdf; *Chapter Headquarters*, THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA, https://www.tnagc.org/chapter-headquarters (last visited Aug. 22, 2025); *Kaylah White*, LINKEDIN, https://www.linkedin.com/in/kaylah-brown-white-141a9531 (last visited Aug. 22, 2025); *Jennifer Finley*, LINKEDIN, https://www.linkedin.com/in/jennifer-finley-734424113 (last visited Aug. 22, 2025); *MTAS Staff*, UNIVERSITY OF TENNESSEE INSTITUTE FOR PUBLIC SERVICE, https://www.ips.tennessee.edu/mtas-staff (last visited Aug. 22, 2025); *TSBA Team*, TENNESSEE SCHOOL BOARDS ASSOCIATION, https://tsba.net/about/tsba-team/ (last visited Aug. 22, 2025).  To be clear, Grassroots emailed communications@tsba.net, not Dr. Ganger in particular.  Regardless, the business address of the Tennessee School Boards Association appears to be in Nashville for all its employees.

[3] It will not do to cite the non-party Individual Defendants, who live in Washington, D.C., Massachusetts, and Connecticut.  Dkt. 55-6 at 4–5; *see also Kendle v. Whig Enters., LLC*, 2016 WL 354876, at *8 (S.D. Ohio Jan. 29, 2016) (declining to transfer to Florida where a defendant "identified no non-party witnesses located in Florida" and instead pointed to "non-party witnesses [] located across the United States").

to compel a witness to testify in a trial "within the state where" the witness "regularly transacts business." This Court could thus compel witnesses in Tennessee to appear for trial. *E.g.*, *Performance Contracting, Inc. v. DynaSteel Corp.*, 2012 WL 1666394, at *6 (E.D. Mich. May 9, 2012) ("[A] Tennessee court would have the ability to compel" witness trial testimony "***within the state where the trial is held***." (cleaned up) (emphasis added)). But the Eastern District of New York could not compel witnesses located in Tennessee to leave the state and travel to New York for trial. FED. R. CIV. P. 45(c)(1)(B). Accordingly, this factor favors not transferring this case.

### 3. Accessibility of Evidence

In modern times, this "is generally a neutral factor in the § 1404(a) analysis because documents may easily be scanned and electronically produced, faxed, or delivered overnight." *Bluecross Blueshield*, 2021 WL 6275252, at *11. This case benefits from the fact that some discovery has already occurred. Specifically, Grassroots was able to electronically produce documents from New York, and TenCate's counsel flew to a location of Grassroots' choosing on Long Island for Grassroots' deposition. Dkts. 55-9, 58-3 at 1. Similarly, TenCate intends to produce documents electronically during discovery. Accordingly, this factor is neutral.

### 4. Convenience of the Parties and Plaintiff's Forum Choice

"When a domestic plaintiff initiates a suit in his home forum, that choice is normally entitled great deference because it is presumptively convenient for the plaintiff." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 493 (6th Cir. 2016). Because the Eastern District of Tennessee is TenCate's home forum, the Court must presume that this forum is convenient to TenCate and give "great deference" to that forum choice. *Id.* Beyond the presumption of convenience, this factor favors not transferring this case for at least two reasons.

First, TenCate's principal place of business is in Tennessee, where it is headquartered. Dkt. 28 at 1, 3. And, as shown, multiple party witnesses are located in Tennessee. Thus, presumption

aside, it is, in fact, substantially more convenient for TenCate to litigate in Tennessee, given the easier ability of client representatives and witnesses to attend court. *Thaxton v. Bojangles' Restaurants, Inc.*, 2018 WL 11240503, at *4 (E.D. Tenn. Dec. 13, 2018) (this factor "weighs against transfer because both named Plaintiffs reside in Chattanooga").

Second, even if the Eastern District of New York is more convenient for Grassroots, that would not swing this factor in favor of Grassroots. "Transfer under § 1404(a) is [ ] inappropriate where it would serve ***only to transfer the inconvenience from one party to the other***." *Sardeye*, 2019 WL 4276990, at *3 (cleaned up) (emphasis added). And if "the balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of forum should prevail." *Thaxton*, 2018 WL 11240503, at *2 (cleaned up). It would be error to shift any inconvenience from Grassroots to TenCate. *TVMS*, 2019 WL 13195858, at *4 ("[F]orcing the plaintiff to absorb the same travel-related inconvenience that the defendant wishes to avoid amounts to a shift in inconvenience . . . that is not permissible under § 1404(a)." (cleaned up)).

### 5.    Financial Means of the Parties

Grassroots represented to the Court that litigating this matter in Tennessee would pose a "tremendous" burden for it "given that it is a non-profit organization run by unpaid volunteers." Dkt. 65 at 12. To begin, Grassroots does, in fact, pay multiple of its staff members for their work. Exhibit 1 to the Declaration of Ashley E. Johnson (hereinafter "Ex.") at 56:21–58:11. In any event, there are two main problems with that argument.

First, Grassroots has provided no concrete evidence of hardship caused by this lawsuit.[4] But "[u]nder § 1404(a), when asserting financial hardships," a party must "state them with specificity." *Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC*, 2016 WL 7209553, at *11 (E.D. Tenn.

---

[4] If Grassroots does provide that evidence in its brief, TenCate requests an opportunity to respond.

Dec. 12, 2016) (cleaned up); *see also id.* (absent specific evidence, a court "cannot act on [a party's] contention that it will suffer significant financial distress from litigation in this district"). And the question is not whether this litigation generally causes hardship, but instead whether ***travel to this forum*** causes undue hardship. *Ostevoll v. Ostevoll*, 2000 WL 1611123, at *5 (S.D. Ohio Aug. 16, 2000) (declining to find that financial status favored transfer where party presented no "proof demonstrating that ***travel to this district*** would cause him hardship" (emphasis added)).

And that rule makes sense. It would be grossly unfair for TenCate to lose its "right . . . to select the forum for the trial of [its] case" based solely on the say-so of Grassroots' counsel or a conclusory declaration. *Blue Diamond*, 282 F. Supp. at 563. In short, to show financial hardship, Grassroots would need to detail its finances, explain the origin of the funds it is using to pay for this litigation, and show—in more than conclusory fashion—that its resources are so rapidly dwindling that it will presently be unable to shoulder the expense of a handful of flights to Tennessee. To date, Grassroots has done nothing of the sort, and, as shown below, it cannot show that litigation in Tennessee poses an undue financial burden.

Second, the hardship must be severe—financial hardship militates in favor of transfer where retention of the case "would effectively preclude a party from defending the suit." *AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp. 1335, 1343–44 (S.D. Ohio 1982). The question is thus not whether the suit burdens the defendant, but instead whether "the chosen forum [would] be ***unduly*** burdensome to the defendant." *Prevent*, 17 F.4th at 658 (emphasis added). Here, Grassroots experiences no undue burden by traveling to Tennessee, because Grassroots ***itself*** significantly added to the costs of this matter by filing a duplicative lawsuit against TenCate in New York state court, even though New York has no personal jurisdiction over TenCate for this suit. Dkt. 55-6. A party that can afford an entirely duplicative suit surely has the resources to fly

to Tennessee in the original suit when called upon. Further, when Grassroots attended the personal-jurisdiction hearing, it flew in not only its corporate representative but also its Executive Director, Particia Wood. Grassroots thus intentionally and unnecessarily **doubled** its employee travel expenses—refuting the notion that flying to Tennessee is an expense it cannot bear. It would be error to transfer this case based on financial hardship with clear evidence to the contrary.

Further, Grassroots' employees regularly fly to Tennessee for other work. Ex. 1 at 133:1–9 (Grassroots' Associate Director travels to Nashville "once a year" on the board of another organization). That routine travel to Tennessee shows it is not unduly burdensome for Grassroots to attend hearings in Chattanooga. *Ostevoll*, 2000 WL 1611123, at *5 (finding no financial burden where party seeking transfer "travels often to the United States on business").

Lastly, if the Court is concerned about Grassroots' claim of financial burden, it can mitigate that concern by holding remote hearings as necessary. *Bluecross Blueshield*, 2021 WL 6275252, at *10 (recognizing that "inconvenience" can be "alleviated by [ ] technological advancements").

### 6. Locus of Operative Facts

The locus of operative facts is "the location where the case finds its center of gravity, where the vast majority of the events in question took place, or where the primary events which gave rise to the alleged wrongs occurred." *Id.* at *11 (cleaned up). Here, the locus of operative facts is in Tennessee. TenCate is headquartered in Tennessee and asserts that it was harmed in Tennessee. Dkt. 28 at 1, 3. Grassroots specifically sent Webinar invitations and a link to the defamatory statements to more than a dozen Tennessee residents. Dkt. 63-3 at 2, 4. As the Court put it, "Grassroots directed allegedly tortious communications into Tennessee and these communications **form the heart of the case**." Dkt. 65 at 9 (emphasis added).

Regardless of where Grassroots authored the defamatory statements, defamation "is a damage to one's reputation"—not merely the act of authorship. *Process Church*, 338 F. Supp. at

1400. Thus, courts have repeatedly declined to try defamation cases in the location of authorship. *Bell v. Rosen*, 2015 WL 5595806, at \*11 (S.D. Ga. Sept. 22, 2015) (transferring venue to the district "where the Plaintiffs resided" in part because "it is the publication, not the writing, of these articles that is a principal event underlying Plaintiffs' defamation claims"); *Boehner v. Heise*, 410 F. Supp. 2d 228, 242 (S.D.N.Y. 2006) (declining to transfer a case to Wisconsin even where "the defamation claims arose out of a letter allegedly written in Wisconsin").

At a minimum, there are multiple loci of operative facts, and this factor is neutral. Given the undeniable Tennessee connections, it would be error to set aside those operative facts and only focus on Grassroots' place of residence in New York. *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1166 (S.D. Fla. 2017) (finding that "this factor does not support transfer" where "there are arguably multiple loci of operative facts, one of which is Plaintiffs' choice of forum").

## C. The Public-Interest Factors Favor Not Transferring this Case.

The public-interest factors are the "local interest in the dispute, the location of the injury, the fullness of the court's docket, preference for trying cases in the place of the governing law, hesitance to apply foreign law, and desire to avoid conflict-of-law problems." *Prevent*, 17 F.4th at 660; *see also* Dkt. 65 at 12. TenCate considers each factor in turn.[5]

### 1. Local Interest

"[A] state generally has an interest in litigating a dispute that involves its own citizens and allegedly tortious conduct that occurred on its own soil." *Bluecross Blueshield*, 2021 WL 6275252, at \*12 (cleaned up). Thus, when a plaintiff "is based in Tennessee and allegedly suffered injuries in Tennessee," this factor "weighs in favor of maintaining venue in this forum." *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 964 (M.D. Tenn. 2008).

---

[5] TenCate is unaware of any foreign law or conflict-of-law problems that would apply to this case.

Here, Tennessee has a substantial interest in litigating a dispute involving TenCate because Tennessee "is home to Plaintiff's headquarters where it employs a significant number of employees." Dkt. 28 at 3. And Grassroots' dissemination of defamatory statements to Tennessee residents is the equivalent of a tort occurring on Tennessee's "own soil." *Bluecross Blueshield*, 2021 WL 6275252, at *12 (cleaned up). Accordingly, Tennessee has a substantial interest in this suit being litigated here, and this factor weighs in favor of not transferring this case.

### 2. Location of the Injury

"Courts have also considered the place of injury or loss in determining whether a district has a substantial connection to the plaintiff's claims." *Bluecross Blueshield*, 2021 WL 6275252, at *7. "[L]ibel is a damage to one's reputation and can be caused only in those jurisdictions where a reputation exists." *Process Church*, 338 F. Supp. at 1400. Here, TenCate was injured in Tennessee—where it is headquartered. Dkt. 28 at 3. Thus, this factor weighs against transfer.

### 3. Docket Congestion

"To measure docket congestion, this Court has previously relied on the number of "cases per U.S. District Court Judge" in each district. *Bluecross Blueshield*, 2021 WL 6275252, at *12 . According to the latest data, the Eastern District of New York has 10,455 cases and 30 judges— ***348.5 cases per judge***; in the Eastern District of Tennessee, there are 1,104 cases and 8 judges— ***138 cases per judge***.[6] Because judges in the Eastern District of New York have more than 200 additional civil cases on their dockets than do judges in the Eastern District of Tennessee, the latter is a less congested forum. This factor favors not transferring the case to a more congested forum.

---

[6] Table C-1—U.S. DISTRICT COURTS–CIVIL FEDERAL JUDICIAL CASELOAD STATISTICS (Mar. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-1. Other metrics back that up. In the Eastern District of New York, the median time to trial is 47.2 months; in the Eastern District of Tennessee, the median time to trial is 29.8 months. Table C-5— U.S. DISTRICT COURTS–CIVIL FEDERAL JUDICIAL CASELOAD STATISTICS (Mar. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-5.

#### 4. Preference for Trying Cases in the Place of the Governing Law

Where a case involves "unclear" or "unsettled" state laws, it is "advantageous to retain the action[] in [the state] where the judges possess a more ready familiarity with the local laws." *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964) (court erred by failing to consider legal "uncertainty" as "bearing on the desirability of transfer"). And this factor is not based on any particular judge's ability to interpret local law. *Fluidtech, Inc. v. Gemu Valves, Inc.*, 457 F. Supp. 2d 762, 768 (E.D. Mich. 2006) ("Although a Michigan federal court is quite capable of interpreting and applying Georgia law, a federal court in Georgia certainly has more experience in doing so.").

This case involves unsettled questions of Tennessee law.[7] Specifically, the Court noted this case involves "non-specific statements about a general class of products." Dkt. 52 at 11. But a person may "recover for defamation" when a "group or class [is] defamed" and, as is the case here, that group "is sufficiently small." Restatement (Second) of Torts § 564A(b) (1977); *accord Elias v. Rolling Stone LLC*, 872 F.3d 97, 108 (2d Cir. 2017) (same under New York law). Tennessee has not decided whether, or how, to apply the group-defamation rule. *Steele*, 2009 WL 4825183, at *3 (finding it "unnecessary" to decide "whether, and under what circumstances, members of a defamed group may recover for comments directed at the group"). Because the court overseeing this case will need to decide that unsettled question of Tennessee law, it is advantageous to retain this action in Tennessee.

### V. CONCLUSION

For these reasons, the Court should not transfer this case to the Eastern District of New York.

---

[7] For purposes of choice of law, it is well established that, "in the case of multistate publication of defamatory material, plaintiff's domicile will ordinarily be the state with the greatest interest in having its law applied." *Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 734 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th Cir. 2001).

DATED: August 22, 2025    Respectfully submitted,

*/s/ Ashley E. Johnson*
John T. Cox III (*admitted pro hac vice*)
Texas Bar No. 24003722
Ashley E. Johnson (*admitted pro hac vice*)
Texas Bar No. 24067689
GIBSON DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3256
Facsimile: (214) 571-2923
TCox@gibsondunn.com

and

Graham H. Stieglitz (*admitted pro hac vice*)
BURR & FORMAN LLP
Georgia Bar No. 682047
1075 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30309
Telephone: (404) 815-3000
Facsimile: (404) 817-3244
gstieglitz@burr.com

and

Brian C. Neal (BPR No. 022532)
Matthew B. Rogers (BPR No. 038777)
222 Second Avenue South, Suite 2000
Nashville, Tennessee 37201
Telephone: 615-724-3200
Facsimile: 615-724-3290
bneal@burr.com
mrogers@burr.com

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I certify that on August 22, 2025, a true and correct copy of this document was served on all counsel of record Pursuant to Federal Rule of Civil Procedure and Local Rule 5(b)(2)(E) for the United States District Court for the Eastern District of Tennessee.

*/s/ Ashley E. Johnson*
Ashley E. Johnson

**ATTORNEY FOR PLAINTIFF**