UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| POLYLOOM CORPORATION | ) | |
|---|---|---|
| OF AMERICA d/b/a TENCATE GRASS | ) | |
| NORTH AMERICA, | ) | |
| | ) | Case No. 1:25-cv-14 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| GRASSROOTS ENVIRONMENTAL | ) | |
| EDUCATION, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

**ORDER**

On July 29, 2025, the Court ordered the parties to submit briefing regarding whether transfer of this case to the United States District Court for the Eastern District of New York is appropriate under 28 U.S.C. § 1404(a) (Doc. 65). On August 22, 2025, both parties filed briefs on whether transfer is appropriate (Docs. 66, 67). On September 8, 2025, Defendant Grassroots Environmental Education, Inc. ("Grassroots") filed a motion to stay (Doc. 69). For the reasons below, this matter will be transferred to the Eastern District of New York, and Grassroots' motion to stay will be denied as moot.

**I.  BACKGROUND**

Plaintiff Polyloom Corporation of American d/b/a TenCate Grass North America ("Polyloom") is a "global group of market-leading companies involved in designing and producing . . . artificial grass surfaces" and "one of the largest designers, producers, distributors, manufacturers, installers, and recyclers of artificial turf in the United States." (Doc. 28, at 3–4.) Grassroots is an environmental advocacy organization that advises the public "on the health risks

of common environmental exposures," including artificial turf fields. (*Id.* at 5, 10 (internal quotations and citation omitted).)

On January 20, 2025, Polyloom initiated this suit against Grassroots and four individual defendants ("Individual Defendants") for alleged defamation and intentional interference with business relationships. (*See* Docs. 1, 28.) Polyloom alleges that Grassroots has defamed it by making (or planning to make) false statements about the health risks of artificial turf fields on Grassroots' two websites, social media pages, and in an upcoming webinar ("the Webinar"). (*See* Doc. 28.) Polyloom alleges that Grassroots advertised the Webinar "to towns, cities and schools across the count[r]y . . . which included those in Tennessee." (*Id.* at 2.) The four Individual Defendants—Dr. Kyla Bennett, Jay Feldman, Dr. Sarah Evans, and Patricia Wood— were scheduled speakers for the Webinar. (*Id.* at 9.) Since and because of the commencement of this suit, Grassroots and the Individual Defendants have sued Polyloom in New York state court under New York's anti-SLAPP law. (*See* Doc. 66-2.)

Grassroots and the Individual Defendants filed a motion to dismiss for lack of personal jurisdiction. (Doc. 17.) After an evidentiary hearing on the motion to dismiss, the Court dismissed the four Individual Defendants and ordered the parties to file briefs regarding whether transfer to the Eastern District of New York is appropriate under 28 U.S.C. § 1404(a). (Doc. 65.) Shortly after filing its brief regarding transfer, Grassroots filed a motion to stay any further proceedings pending the Court's ruling on transfer. (Doc. 69.)

II. **STANDARD OF LAW**

The Court has broad discretion to transfer a civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other . . . division where it might have been brought . . . ." 28 U.S.C. § 1404(a); *see Phelps v. McClellan*, 30 F.3d

658, 663 (6th Cir. 1994). A transfer under Section 1404(a) is appropriate when it is established, first, that the claim might have been brought in the district to which transfer is requested, and, second, that the balance of relevant private and public interest factors "reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (citation omitted).

### III.   ANALYSIS

#### A.   Whether This Case Might Have Been Brought in the Transferee District

Transfer to the Eastern District of New York is only appropriate under § 1404(a) if the case could have been brought in that district. *See* 28 U.S.C. §1404(a); *McKevitz v. Capital All. Grp.*, No. 3:18-CV-131, 2019 WL 1318245, at *2 (E.D. Tenn. Mar. 22, 2019) ("First, the Court must decide whether the action could be properly brought in the proposed transferee district, on both jurisdictional and proper venue considerations.") (citation omitted); *see also Sacklow v. Saks, Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019) (showing that the case could have been brought in the proposed transferee district "is a prerequisite for transfer under § 1404(a)"). This means that the Eastern District of New York must (1) have subject-matter jurisdiction over the case; (2) have personal jurisdiction over the defendants; and (3) be a proper venue for the action. *See Zimmer Enters., Inc. v. Atl. Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007); *see also e.g.*, *McLouth Steel Corp. v. Jewell Coal & Coke Co.*, 432 F. Supp. 10, 11 (E.D. Tenn. 1976).

The parties do not dispute that the Eastern District of New York is a proper venue or has subject-matter jurisdiction. Polyloom, however, argues that New York is not an appropriate forum because it does not have personal jurisdiction over Polyloom or the dismissed Individual Defendants. (*See* Doc. 67, at 8–10.) As an initial matter, the analysis on whether a case could have been brought in a district does not consider whether that district has personal jurisdiction

3

over a plaintiff but considers whether that district has personal jurisdiction over the defendants. *See Zimmer*, 478 F. Supp. 2d at 990 (stating that a court is required to analyze "whether [the transferee court] would have personal jurisdiction of the *defendants*[.]"(emphasis added)). Therefore, Polyloom's argument that New York does not have personal jurisdiction over Polyloom is not a fact the Court must consider when determining whether transfer is proper.

Polyloom also argues that New York did not have personal jurisdiction over the Individual Defendants at the time the suit was commenced and relies on *Hoffman v. Blaski*, 363 U.S. 335 (1960). In *Hoffman*, the defendants moved to transfer the action to another district that lacked jurisdiction over the defendants and where plaintiffs were unable to initially bring the action. *See* 363 U.S. 336–39. The Supreme Court held that,

> if when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district where the action might have been brought . . . it is immaterial that the defendant subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum.

*Id.* at 344 (citation modified). However, when an "action [is] not properly brought against [some defendants] in [the transferor court]" and that "[action] could not have been properly brought against [those same defendants] in [the transferee court,]" those defendants are no longer before the court and have "no status as parties" to "bar a transfer of the action." *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961).

Here, the Court determined that it did not have personal jurisdiction over the Individual Defendants because they did not purposefully avail themselves of the privilege of acting in Tennessee. (*See* Doc. 65, at 9–10.) Therefore, the Individual Defendants have no status as parties to bar a transfer of this action. As to the one remaining Defendant, Grassroots, it states that New York has jurisdiction because it is located in New York, (*see* Doc. 66, at 1), and

4

Polyloom does not dispute that New York has personal jurisdiction over Grassroots. Accordingly, the Eastern District of New York is a place where the case could have been brought.

### B. Public and Private Factors for Transfer

In deciding to transfer a case to another district, courts must conduct an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted), taking into account:

> (1) convenience of the witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Functional Pathways of Tennessee, LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 930–31 (E.D. Tenn. 2012) (citations omitted); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013) (describing the private and public interest factors to be considered in transferring a case under § 1404(a)). "A Court may consider any factor that may make the eventual trial easy, expeditious, and inexpensive." *Gomberg v. Shosid*, No. 1:05-CV-356, 2006 WL 1881229, at *10 (E.D. Tenn. July 6, 2006).

#### 1. Convenience of witnesses

"The convenience of the witnesses is often considered the most important factor." *Functional Pathways of Tenn., LLC*, 866 F. Supp. 2d at 931. Here, Polyloom contends that its witnesses fall into two groups: (1) employees of Polyloom, and (2) individuals who received emails from Grassroots for the webinar. (*See* Doc. 67, at 11–13.) For Polyloom's employees, it

5

Case 1:25-cv-00014-TRM-MJD  Document 72   Filed 11/03/25   Page 5 of 11   PageID #: 957

identifies three employees—two who work in Chattanooga and one who is in the Netherlands. (*Id.* at 11.) The second category of witnesses includes thirteen individuals—eight who work in Nashville and five who work in Knoxville. (*Id.* at 12–13.) Grassroots represents that it intends to call six witnesses who live, work, or "can easily get to New York." (Doc. 66, at 2.)

Regardless of whether the case remains in Tennessee or is transferred to New York, there will be inconvenience to the witnesses. However, with the pending New York state court litigation, which substantially overlaps this matter, it would be inconvenient to require these witnesses to appear both in a Tennessee court and a New York court. Accordingly, the convenience of the witnesses favors transfer.

### 2. Availability of judicial process to compel the attendance of unwilling or uncooperative witnesses

Both Polyloom and Grassroots identify witnesses that could be compelled by judicial process to testify at trial in either Tennessee or New York. (Docs. 67, at 8; 66-1, at 3.) Accordingly, this factor is neutral.

### 3. Location of the relevant documents or records, and the relative ease of access to sources of proof

The location of the relevant documents or records, and the relative ease of access to sources of proof factor also favors transfer. Both parties note that documents and depositions are needed from Grassroots and that Polyloom has already flown to New York to take a Rule 30(b)(6) deposition from Grassroots. Since all of the Grassroots staff are located in New York and retain most of the relevant information and proof is also located there, this factor favors transfer.

6

### 4. Residence and convenience of the parties

Polyloom's principal place of business is in Dayton, Tennessee, and Grassroots' principal place of business is in Port Washington, New York. (Doc. 28, at 1.) This factor would be neutral if these were the only facts. However, a party's "medical disability can support a motion to transfer venue." *Nationwide Mut. Fire Ins. Co. v. Barbour*, No. 5:15 CV 456, 2015 WL 5560209, at *3 (N.D. Ohio Sept. 21, 2015) (citation omitted). Here, one of Grassroots' officers, Douglas Wood, suffers from a medical condition that requires a care regimen that would be difficult to sustain away from New York. (Doc. 66, at 4.) Therefore, this factor weighs in favor of transfer.

### 5. Relative financial means of the parties

Grassroots states that it is a "not-for-profit corporation with an annual operating budget of approximately $350,000" that "does not have the resources to support a lengthy trial in a distant state." (Doc. 66-1, at 4.) Grassroots further contends that, "[i]f this case continues in Tennessee, the related expenses would significantly impact Grassroots' operating budget and could force [it] to terminate staff and cut back on existing programs." (*Id.*) Polyloom is "a global group of market-leading companies" and "one of the largest fully integrated artificial turf companies[.]" (Doc. 28, at 3–4.) Polyloom even concedes that one of its directors works "primarily out of the Netherlands, but he regularly travels to and works out of [Polyloom's] offices in [the Chattanooga area]." (Doc. 67, at 11.) Due to the financial hardships for Grassroots to litigate this matter in Tennessee, notably the possible threat of staff termination, and the lack of financial hardship on the Polyloom if this matter was transferred, this factor weighs in favor of transfer.[1]

---

[1] Polyloom makes several arguments that Grassroots would not be unduly burdened to litigate this case in Tennessee. Specifically, Polyloom argues that Grassroots has the financial means to

7

### 6. Locus of the operative facts and events that gave rise to the dispute or lawsuit

Polyloom and Grassroots disagree on the locus of operative facts. Polyloom contends that Tennessee is the locus of operative facts because Grassroots' alleged defamatory statements were sent to individuals in Tennessee and Polyloom is headquartered in Tennessee. (*See* Doc. 67, at 17.) However, Polyloom's amended complaint states that the promotional materials that contained the allegedly defamatory statements were sent "across the count[r]y, including Tennessee," and that its "primary customer base" is "towns, cities and schools across the count[r]y." (Doc. 28, at 9, 10.) Grassroots argues that New York is the locus of operative facts because the alleged defamatory statements were "made and published in New York" and an "overwhelming majority of people" who clicked on the promotional material that included the alleged defamatory statements were from New York. (Doc. 66, at 5, 6.) Tennessee and New York are both places where Polyloom could have suffered injuries from the alleged defamatory statements—both are places where the alleged statements were made and where Polyloom has a customer base. Therefore, this factor is neutral.

---

litigate in Tennessee because it has filed a duplicative lawsuit in New York, it flew its Executive Director Patricia Wood for the personal jurisdiction hearing when the corporate representative was already attending the hearing, and its associate director "travels to Nashville once a year" for a "board of another organization." (Doc. 67, at 16–17.) The Court finds these arguments inconsequential. The lawsuit in New York substantially overlaps this case. (*See* Doc. 66-2). In that suit, the prayer for relief requests damages for the costs of this suit and the New York suit. (*See id.* at 53.) Polyloom's next argument ignores that Patricia Wood was initially named as a defendant in this matter, and whether she would be dismissed from this case was at issue at the personal jurisdiction hearing. Also, Polyloom's argument that the associate director's travel to Nashville is irrelevant to the financial means of Grassroots to litigate this matter in Tennessee; Polyloom's exhibit shows that the director's travel is not related to his work at Grassroots but rather is in connection with his work on the American Society of Composers, Authors, and Publishers. (Doc. 67-2, at 18.) What the associate director does in his free time or with an organization outside of his role with Grassroots has no impact on the financial ability of Grassroots to litigate this suit in Tennessee. In contrast, Polyloom acknowledges that one of its directors flies internationally regularly between the Netherlands and Teneessee to work in Polyloom's offices.

### 7. Each forum's familiarity with the governing law

"A change of venue under [Section] 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Polyloom argues that there is uncertainty on how Tennessee state law analyzes group-defamation.[2] Even assuming Tennessee courts' application of the "of and concerning" requirement for group-defamation suits is unclear, this factor weighs only slightly against transfer. In practice, of course, the transferee court will capably apply Tennessee substantive law as appropriate, just as this Court would have.

### 8. The deference and weight accorded to the plaintiff's choice of forum

"The choice of the forum by the petitioner is no longer as dominant a factor as it was prior to the ruling in *Norwood v. Kirkpatrick*[.]" *Lemon v. Druffel*, 253 F.2d 680, 685 (6th Cir. 1958); *see also*, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) ("[Section] 1404(a) accords broad discretion to district court, and plaintiff's choice of forum is only one relevant factor for its consideration."). Polyloom, relying on *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016), argues that the Court must "give great deference to [Polyloom's] forum choice." *Hefferan* is distinguishable though because, in that case, the motion at issue was a

---

[2] Polyloom, relying on *Steele v. Ritz*, argues that Tennessee has not decided "whether, or how, to apply the group-defamation rule." (Doc. 67, at 20.) In *Steele*, the case was brought by "an adult cabaret and three female employees of adult entertainment businesses and cabarets" against the county commissioner for stating that "almost without exception, these girls were sexually abused by a family member and have an addiction to drugs or alcohol [that] these clubs feed on . . . ." No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *1 (Tenn. Ct. App. Dec. 16, 2009) (citation modified). The Tennessee Court of Appeals held "[t]here is no allegation . . . that the statement was made 'of and concerning' the plaintiffs." *Id.* at *3. Accordingly, Tennessee courts use the "of and concerning" requirement when deciding if there was a defamatory statement in a group-defamation suit. *See id.* Furthermore, the court in *Steele* stated that it was "unnecessary" to decide "whether, and under what circumstances, members of a defamed group may recover for comments directed at the group," because the plaintiff's complaint failed to allege an indispensable element of defamation—the "of and concerning" requirement. *See id.* at *2–3.

motion to dismiss on the grounds of *forum non conveniens*, as opposed to the Section 1404(a) transfer in this case. "However, § 1404(a) transfers are different than dismissals on the ground of *forum non conveniens*." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *see also Lemon*, 253 F.2d at 683–85 (explaining how Section 1404(a) provides district courts a broader discretion than what exists under the rule of *forum non conveniens*); *Norwood v. Kirkpatrick*, 349 U.S. 29, 30 (1955) (stating that *forum non conveniens* is a more narrow and stricter doctrine than Section 1404(a)). Here, Polyloom's choice of forum, the Eastern District of Tennessee, is a relevant factor that weighs against transferring the case, but since this matter is not one of *forum non conveniens*, the Court is not required to give this factor "great deference."

### 9. Trial efficiency, fairness, and the interests of justice based on the totality of the circumstances

The final factor analyzes the trial efficiency, fairness, and other unenumerated factors that weigh in the interest of justice. For trial efficiency, Polyloom argues that the Eastern District of New York is a "more congested forum" than the Eastern District of Tennessee. (Doc. 67, at 19.) This factor weighs against transferring the case.

Polyloom also argues that the location of the injury should be considered, and that Polyloom was injured in Tennessee. (Doc. 67, at 19.) As discussed above, Polyloom has argued that alleged defamatory statements of Grassroots were publicized across the country to Polyloom's "primary customer base," (Doc. 28, at 9), but that the location of the injury was in Tennessee (Doc. 67, at 19). There is an incongruency to Polyloom's argument—that the location of the injury, Tennessee, favors retention of the case in this Court, but the alleged defamatory statements went across the country to Polyloom's customer base. Grassroots argues that no one from Tennessee registered for the Webinar and that most of the individuals who registered for the Webinar were from New York. (Doc. 66-1, at 4.) This factor is, at best for Polyloom,

neutral; and it appears that the gravamen of Polyloom's injuries are likely located elsewhere, such as New York.

Taking all the factors into consideration, the Court finds that the convenience of witnesses, the location of the relevant documents and records, the convenience of the parties, and the relative financial means of the parties all weigh more heavily in favor of transferring the case to the United States Court for the Eastern District of New York—the federal judicial district where the New York state court litigation is pending.

### IV. CONCLUSION

For the reasons stated above, this case is **ORDERED** to be transferred to the Eastern District of New York. The Clerk of Court is **DIRECTED** to transfer this case to the United States District Court for the Eastern District of New York. Furthermore, Grassroots' motion to stay (Doc. 69) is **DENIED** as moot.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**